UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                            Plaintiffs,

   -against-

LOCAL 638…
LOCAL 25 OF THE SHEET METAL
WORKERS' INTERNATIONAL
ASSOCIATION, LOCAL 25 JOINT
APPRENTICESHIP COMMITTEE…
SHEET METAL AND AIR CONDITIONING
CONTRACTORS ASSOCIATION OF
NORTHERN NEW JERSEY, INC., etc.,

                            Defendants.

------------------------------------------------------------- X

71 Civ. 2877 (LAK-MHD)

**MEMORANDUM OPINION**

## Parties

Jedd Mendelson, Esq.
Littler Mendelson, P.C.
One Newark Center, 8th Floor
Newark, NJ 07012

Counsel for Defendant
Sheet Metal Contractors Association of Northern New Jersey

Bennet D. Zurofsky, Esq.
17 Academy Street, Suite 1010
Newark, New Jersey 07102

Counsel for Defendant
Sheet Metal Workers International Association, Local Union 25

Louis Graziano, Esq.
EEOC New York Regional Office
33 Whitehall St. 5th Floor
New York, NY 10004

Counsel for Plaintiff
Equal Employment Opportunity Commission

DAVID RAFF, SPECIAL MASTER

## INTRODUCTION

By informal letter motion dated November 4, 2010, the Sheet Metal Contractors Association of Northern New Jersey ("Association") objects to certain proposed modifications to the Referral System Rules ("Rules") proffered by Sheet Metal Workers International Association, Local Union No. 25 ("Local 25" or "union"). The Association contends that Local 25 has, through the mechanism of proposing an addendum to the Rules, improperly tried to impose conditions for the use of the Market Recovery Agreement ("MRA") established by a June 24, 2010 Arbitration Award rendered by the National Joint Adjustment Board for the Sheet Metal Industry ("NJAB"). Accordingly, it requests that the Special Master assert jurisdiction over the matters in dispute and sustain the Association's objections. The Association also requests that certain information about MRA usage be collected and made available for its review.

In an email dated November 24, 2010, Local 25 opposes the Association's motion contending that its dispute with the Association is one of contract interpretation and argues that the Special Master has no jurisdiction to decide the merits of the objection. The union further argues that the Special Master has no authority to determine what information should be made available to the Association. By letter dated December 7, 2010, the Association replied to Local 25's opposition.[1]

For the reasons set forth below, it is premature for the Special Master to assert jurisdiction at this time. Further, the Special Master, whose power is limited to that which is necessary to supervise, administer, interpret or enforce the Court's orders, lacks the authority to release or compel the release of MRA information solely to allow the Association or a contractor to assess the efficacy of the MRA. As a result, the Association's present request is denied in all respects.

## BACKGROUND

In the Spring of 2010, Local 25 and the Association reached an impasse during negotiations for a new collective bargaining agreement.[2] Pursuant to the

---

[1] Plaintiff Equal Employment Opportunity Commission ("EEOC"), by email dated December 1, 2010, asserts that it considers this a labor management dispute and will not intervene; but it does want to know how job referrals are made under this program and how they will be reported.

[2] Facts referenced herein that were not set forth in the present submissions by the parties, but relevant to an understanding of this dispute, were obtained from the record before the Special Master as a result of prior documents or electronic submissions filed with the Special Master in the performance of his duties.

3

dispute resolution procedures set forth in the Standard Form of Union Agreement, their impasse was submitted to the NJAB. By Arbitration Award issued on June 24, 2010, the NJAB imposed a Market Recovery Agreement of Open Shop Projects upon Local 25 and the Association. The MRA, which was to be effective as of June 1, 2010, created a wage package for members and apprentices on certain types of work that is significantly below the standard agreement or "A" wage package.

The MRA has implications for the Rules, set forth as Appendix A to the Stipulation and Order Regarding the Local 25 Referral Hall entered June 18, 2009 ("Appendix A"). Specifically, the MRA creates a new tier of jobs with a wage and benefit structure that were not envisioned when the original Rules were established. Exercising its right to propose modifications to the Rules, *see* Appendix A ¶ 25, Local 25 submitted a proposed "Market Recovery Agreement Addendum" ("Proposed Rules"). Among the proposed rule changes, Local 25 put in language asserting its authority to approve MRA jobs. *See* Proposed Rules ¶¶ 5-8, 14. The Association objects to the Proposed Rules contending, in essence, that Local 25 is trying to obtain through referral system rule changes that which it could not obtain through the Arbitration Award or collective bargaining. Thus, it has requested that the Special Master assert jurisdiction over the dispute since approval of any modification to the Rules falls within his authority. The

Association goes on to claim that it needs certain information about how the MRA is working in order to assess its efficacy and asks the Special Master's Office to collect that information from union sources and to make it available to the Association.

Local 25 counters the Association's argument by contending that this is really nothing more than a labor management dispute that must be handled through the grievance process found in the collective bargaining agreement. As to the Association's request for MRA information, the union argues that although the Special Master's Office collects and reviews information in monitoring compliance with various court orders, it does not have the authority to release that information to the Association or its members.

## DISCUSSION

The clash between Local 25 and the Association is a hybrid in that it implicates both a labor management contract dispute and the referral system procedures. If the disagreement were simply one of whether or not the language in the MRA provides that Local 25 has the authority to "approve" of MRA jobs, it would be a pure contract interpretation dispute over which the Special Master would have no jurisdiction. In this case, however, the dispute arose because Local

25 proposed modifications to the Rules, which are within the Special Master's jurisdiction.

Local 25's Proposed Rules are not limited to simply the procedural method of making referrals to MRA jobs, but contain language that goes to the implementation of the MRA. For example, Proposed Rule 5 states: "All [MRA] jobs must first be approved by the Business Manager." That rule (and others containing "approval" language, *see id.* Proposed Rules 6-8, 14) would, if adopted by the Special Master, give Local 25 the power to decide what jobs are or are not approved for MRA purposes in so far as referral system use is concerned. The Association contends that not only is there no language in the MRA that allows Local 25 to "approve" MRA jobs, it maintains that Local 25 has, without success, attempted to get that language into the MRA both before and after the Arbitration Award. The Association also argues that since Local 25 used the Proposed Rules as the vehicle to advance its position, and it knew that the referral system was under the administration of the Special Master, the union effectively waived any claim that the Special Master lacks jurisdiction.

The core of this dispute is one of contract interpretation that is, in the first instance, best left to the labor management dispute resolution mechanisms. Consequently, even though Local 25 used a proposed addendum to the Rules as the vehicle to claim "approval authority" over MRA jobs, it would be premature for

the Special Master to assert jurisdiction before the parties have the opportunity to utilize the collective bargaining agreement grievance procedures. That being said, it is indisputable that the Rules need to be modified to establish procedures for handling MRA job referrals – and that process should happen quickly because the referral system has already been called upon to deal with some MRA jobs.

The Court's orders firmly establish the goal that "all members and apprentices of [the union] share equitably in all available employment opportunities in the industry." Amended Affirmative Action Program & Order ¶ 3. The orders further give the Special Master authority to "establish procedures and practices for work referral and employment . . . (Order & Judgment ¶ 14(f)) and "to modify, amend or change [] work referral and employment activities, or institute or undertake additional procedures or activities regarding work referral or employment . . . ," *id.* ¶ 21(g). *See also* Rules ¶ 25. Equal earnings opportunities is integral to achieving the goal of equal work opportunities. If minorities and non-minorities each worked an average of 1,000 hours in the year, one would not expect minorities to, on average, earn only 50% of what the non-minorities earned. Therefore, where some jobs have rates that are now substantially below the standard wage package, there is a need to have a job referral system that does not create, foster or accept a two class system where minorities end up with the bulk of lower wage work or, in times of economic hardship, non-minority members get

those jobs and minority members get little or no work, even at the reduced wages. *Cf. EEOC, et al v. Local 638 . . . Local 28 of the Sheet Metal Workers Int'l Ass'n, et al.*, 401 F. Supp. 467, 483-84 (S.D.N.Y. 1975) (Werker, J.) (expressing the Court's concern about non-whites being grouped into a local with substantially lower wages).

Implementation of the MRA obviously raises questions about the operation of the referral system. For example, if a member accepts a lower wage MRA job, should that job referral be treated the same as a standard wage job referral such that the member would be removed from the list and have to start all over again when the lower wage job ends? Conversely, should there be a two list system so that the MRA job does not affect list standing for a standard wage job? Should there be a limit on how many MRA jobs can be taken or on how long they last as part of some calculus as to whether the member can maintain a position on the standard wage list? In the latter instance, is it fair for members to work four months on MRA jobs but maintain their position on the list for standard wage jobs so that they could get a standard wage job over a member who did not have an MRA opportunity and has not worked at all? These and other issues need to be addressed in a meaningful manner. *See* Proposed Rules 10–13 (examples of efforts to address some of the open issues). It is in the interests of all parties that the Rules be modified as quickly as possible to ensure fair and equitable referrals for

MRA work, while preserving the opportunity for members to obtain standard wage job referrals without undue penalty.

In the event that Local 25 and the Association do not resolve their differences and, as a result, the lack of resolution interferes with, thwarts, or frustrates the implementation of essential modifications to the Rules or any requirements of the Court's orders, the Special Master will have no alternative but to assert jurisdiction to enforce the Court's directives.

It needs to be made crystal clear, however, that it is not acceptable for the Association to sit back and do nothing to resolve its dispute with Local 25 with the expectation that the Special Master will be compelled to assume jurisdiction at some point. Nor is it acceptable for Local 25 to take action that prevents or unduly limits use of the MRA by contractors or to fail to take action necessary for its efficient implementation. The Arbitration Award imposed an agreement upon the parties that allows for a reduced wage package for certain types of work so that Local 25 contractors can be competitive and recover market share and union members can obtain some work in difficult economic times. The Association has a strong interest in obtaining the benefits of that agreement for its members. The union has an equally strong interest in protecting its members from being exploited by misuse of the MRA.

Both parties have legitimate concerns and both have a vested interest in developing a responsible process for allowing proper use of the MRA and for staffing MRA jobs. Neither the Association members nor the union benefit if the work that the MRA is designed to capture goes non-union, or goes to nonparty contractors who are in signed agreement with unions that have lower wage packages, while the parties squabble over the implementation of the MRA. It is expected that the parties will act in good faith to negotiate a resolution or that they will promptly utilize the contract dispute resolution system provided for in Article X of the collective bargaining agreement.[3]

With regard to the issue of what information relevant to the implementation of the MRA should be provided to the Association, the Association has a justifiable interest in obtaining information that would assist it to analyze the usefulness of the MRA. The Special Master's Office, as part of its monitoring function, and as administrator of the referral system, will necessarily obtain MRA information that both it and the EEOC need to evaluate compliance with the Court's orders. It does not follow, however, that it is appropriate for the Special Master's Office to be the collector or purveyor of information for monitoring the effectiveness of the MRA. Moreover, the Special Master does not have, without

---

[3] To the extent, if any, that Section 10 of Article X of the Standard Form of Union Agreement applies to the interpretation or enforcement of an NJAB Arbitration Award, it would seem that the most expeditious way of obtaining a prompt resolution of the contract language disagreement would be for one or both parties to at least attempt to directly "invoke the services of the [NJAB]."

consent of all parties, jurisdiction to determine a dispute as to which party "owns" the information or over what information should be released.[4]

## CONCLUSION

The Association's request that the Special Master assert jurisdiction over the MRA dispute is denied as premature. The parties are on notice, however, that if they cannot resolve their dispute so that meaningful MRA modifications can be made to the Rules, the Special Master may be compelled to assume jurisdiction to ensure that the referral system is not rendered unfair or ineffectual.

The Association's request that the Special Master's Office collect and provide MRA information is denied.

**IT IS SO ORDERED**

Dated: December 8, 2010
      New York, New York

*David Raff*
David Raff, Special Master
470 Park Avenue South
3rd Floor North
New York, New York 10016
212-732-5400

---

[4] The parties are urged to negotiate an information exchange that, while protecting their respective interests, would allow the Association to assess the value of the MRA.

11

## CERTIFICATE OF SERVICE

David Raff, being duly appointed Special Master in <u>EEOC et. al. v. Local 638…Local 28 et. al.</u>, 71 Civ. 2877 (LAK-MHD), pursuant to Rule 53 of the Federal Rules of Civil Procedure, by Order dated September 2, 1975, herein certifies that I served a true copy of the annexed Memorandum Opinion by first class mail on the date and to the counsel and addresses listed below.

Date of Mailing: December 8, 2010

> Jedd Mendelson, Esq.
> Littler Mendelson, P.C.
> One Newark Center, 8th Floor
> Newark, NJ 07012
>
> Counsel for Defendant
> Sheet Metal Contractors Association of Northern New Jersey
>
> Bennet D. Zurofsky, Esq.
> 17 Academy Street, Suite 1010
> Newark, New Jersey 07102
>
> Counsel for Defendant
> Sheet Metal Workers International Association, Local Union 25
>
> Louis Graziano, Esq.
> EEOC New York Regional Office
> 33 Whitehall St. 5th Floor
> New York, NY 10004
>
> Counsel for Plaintiff
> Equal Employment Opportunity Commission

Dated: New York, New York
December 8, 2010

_____
David Raff, Special Master