UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
And THE CITY OF NEW YORK, and THE NEW YORK
STATE DIVISION OF HUMAN RIGHTS,

                       Plaintiffs,

                   -and-

THE HISPANIC SOCIETY AND INDIVIDUAL NONWHITE
LOCAL 28 MEMBERS,

                    Plaintiff-Intervenors,

               -against-

LOCAL 638...
LOCAL 28 OF THE SHEET METAL WORKERS'
INTERNATIONAL ASSOCIATION, LOCAL 28 JOINT
APPRENTICESHIP COMMITTEE...SHEET METAL AND
AIR CONDITIONING CONTRACTORS ASSOCIATION OF
NEW YORK CITY, INC., etc.,

                     Defendants.
----------------------------------------------------------------------X

VAMCO SHEET METALS, INC.,

                    Complainant,

               -against-

LOCAL 28 OF THE SHEET METAL WORKERS'
INTERNATIONAL ASSOCIATION and LOCAL 28 JOINT
APPRENTICESHIP COMMITTEE,

                    Respondents.

----------------------------------------------------------------------X

71 Civ. 2877 (LAK)
(Before the Special Master)

**OPINION AND
ORDER**

U.S. DISTRICT COURT
FILED
AUG 1 0 2012
D.S.
S.D. OF N.Y.

## PARTIES

Wendell V. Shepherd, Esq.
Lauren M Kugielska, Esq.
Barnes, Iaccarino & Shepherd, LLP
258 Saw River Mill Road
Elmsford, NY 10523

Counsel for Respondent
Local 28 of the Sheet Metal Workers' International Association


William Rothberg, Esq.
Law Offices of William Rothberg
16 Court Street, Suite 2200
Brooklyn, NY 11241

Counsel for Respondent
Local 28 Joint Apprenticeship Committee


Brendan R. Wolf, Esq.
Fox & Kowalewski, LLP
Four Old Route 146
P.O. Box 958
Clifton Park, NY 12065-0802

Counsel for Complainant Vamco Sheet Metals, Inc.


**DAVID RAFF, SPECIAL MASTER**


### INTRODUCTION

Complainant Vamco Sheet Metals, Inc. ("Vamco") filed a complaint with the Special Master (also referred to as "the Administrator" in some of the court's various orders) pursuant to the complaint procedures established in the Amended Affirmative Action Program and Order ("AAAPO") ¶¶ 62 and 63. Vamco alleges that respondents Local 28 of the Sheet Metal Workers' International Association ("Local 28" or "union") and the Local 28 Joint

Apprenticeship Committee ("JAC") (collectively, "respondents") violated those provisions of AAAPO that require apprentices to be assigned to employers on the basis of one apprentice to every four working journeypersons for those employers performing sheet metal work within Local 28's jurisdiction. *See* AAAPO ¶¶ 22 and 43. Vamco further alleges that as a consequence of respondents' failure to comply with the apprentice assignment provisions of AAAPO it has suffered financial injury.

Both respondents have moved, under Fed. R. Civ. P. 12(b)(6), to dismiss the complaint for failure to state a claim.[1]   In addition, respondent JAC moved, under Fed. R. Civ. P. 12(b)(1), to dismiss the complaint for lack of subject matter jurisdiction; and respondent Local 28 has asserted that Vamco lacks standing to bring the instant complaint.   Vamco opposes these motions. For the reasons set forth below, respondents' respective motions to dismiss are denied in their entirety.

## BACKGROUND

Vamco is a sheet metal contractor incorporated in New York State and headquartered in Putnam County.  (Amended Complaint dated March 27, 2012 ("Amended Compl.") ¶¶ 1-2).[2] Respondent Local 28 is a union that represents individuals who work on air driven heating and cooling systems for office buildings, hospitals, malls, and the like, as well as central air system

---

[1]   While the complaint procedures established pursuant to the court's orders were intended to permit *pro se* members, apprentices, employers, and other interested persons to file complaints informally, it is more orderly to follow the Federal Rules of Civil Procedures when a complaint is submitted alleging a substantial violation of the court's orders, and all parties are represented.

[2]   The facts set forth in this Opinion and Order, apart from general background information, are derived solely from the pleadings. Additional factual allegations and other evidence submitted in support of, and in opposition to, the motions have been excluded from consideration. *See* Discussion, Section I, *infra.*

housing.  Its jurisdiction encompasses the five boroughs of New York City and Nassau and Suffolk counties.  *See* AAAPO ¶ 2 (as amended after the Sheet Metal Workers' International Association separated the Northern New Jersey jurisdiction from Local 28 in 1991 and created Local 25 of the Sheet Metal Workers International Association).  Respondent JAC administers a five year classroom and on-the-job training program for apprentices with the goal of training them to become members of Local 28, or "journeypersons."  *See* Stipulation and Order "So Ordered" July 18, 2007.

Vamco's complaint is not a plenary action.  Rather, it is a limited proceeding initiated within the main case pursuant to the complaint provisions established by the court in AAAPO.[3] *See also* Order & Judgment, dated September 2, 1975, ("O&J") ¶ 15.[4]  Accordingly, Vamco's allegations cannot be considered in isolation from the main case.

---

[3] The complaint provisions of AAAPO,  paragraphs 62 and 63, state, respectively:

> 62. Acting at the request of any party, contractor or any interested person, the Administrator shall hear and determine all disputes concerning the operation of this Amended Program and any claim of violation of this Amended Program.

> 63. Any party, employer or any individual affected by this Amended Program may make a complaint to the Administrator. The Administrator shall give all parties notice of such a complaint within five days and, where a hearing is warranted, expeditiously schedule such hearing.

[4] O&J, paragraph 15, states, in relevant part:

> The administrator shall hear and determine all complaints concerning the operation of this Order and the [Affirmative Action] Program and shall decide any questions of interpretation and claims of violations of this Order and the Program, acting either on his own initiative or at the request of any party herein or any interested person.

4

In order to appreciate the context of Vamco's allegations, the complaint must be viewed against the long history of respondents' failure to comply with Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and the court's remedial orders. *See EEOC v. Local 638,* 401 F. Supp. 467 (S.D.N.Y. 1975) (Werker, J.), *aff'd sub nom, EEOC v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n,* 532 F.2d 821 (2d Cir. 1976); *EEOC v. Local 638 & Local 28 of Sheet Metal Workers' Int'l Ass'n.,* 1982 WL 445 (S.D.N.Y. Aug. 16, 1982) (Werker, J.), *aff'd in part, rev'd in part,* 753 F.2d 1172 (2d Cir. 1985), *aff'd sub nom, Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC,* 478 U.S. 421 (1986); *EEOC v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n,* 889 F. Supp. 642 (S.D.N.Y. 1995) (Carter, J.), *aff'd in part, rev'd in part sub nom, EEOC v. Local 638,* 81 F.3d 1162 (2d Cir. 1996); *EEOC v. Local 638-Local 28 of Sheet Metal Workers' Int'l Ass'n,* 13 F.Supp.2d 453 (S.D.N.Y. 1999) (Carter, J.), *aff'd in part, rev'd in part sub nom, City of New York v. Local 28, Sheet Metal Workers' Int'l Ass'n,* 170 F.3d 279 (2d Cir. 1999); *EEOC v. Local 638 etc.; EEOC v. Local 28,* 2001 WL 66327, at *2 -*3 (S.D.N.Y. Jan. 26, 2001) (Carter, J.); *Local 28 of the Sheet Metal Workers' Int'l Ass'n,* 2003 WL 21767772 (S.D.N.Y. July 30, 2003) (Carter, J.); *EEOC v. Local 638 etc.; Local 28 of the Sheet Metal Workers' Int'l Ass'n,* 2003 WL 21804837 (S.D.N.Y. Aug. 6, 2003) (Carter, J.); *EEOC v. Local 638 etc.; Local 28 of the Sheet Metal Workers' Int'l Ass'n,* 2004 WL 2414013 (S.D.N.Y. Oct. 28, 2004) (Carter, J.); *EEOC v. Local 638 etc.; Local 28 of the Sheet Metal Workers' Int'l Ass'n,* 2005 WL 823915 (S.D.N.Y. April 8, 2005) (Carter, J.). Only those facts relevant to respondents' respective motions to dismiss are recited below.

### 1. The Main Case As It Affects Apprenticeship Job Assignments

In 1975, the court found that Local 28 and the JAC had discriminated against nonwhite union members, apprentices and applicants in violation of Title VII. *EEOC v. Local 638,* 401 F. Supp. 467. It entered the O&J, which permanently enjoined Local 28, "its officers, agents, employees and successors and all persons in active concert or participation with them" from, among other things, "engaging in any act or practice which has the purpose or the effect of discriminating in . . . indenturing apprentices, referral . . . or privileges of employment" or from taking "any other action which would deprive or tend to deprive any individual of employment opportunities with Local 28 contractors . . . ." O&J ¶ 1. *See also id.* ¶ 8 (equivalent injunctive provision applicable to the JAC).

The O&J also ordered the establishment of an affirmative action program. *Id.* ¶¶ 21-22. After earlier iterations of an affirmative action program, and two contempt citations for violating previous orders, the court entered AAAPO in 1983. Those contempt citations and AAAPO were upheld by the United States Supreme Court in 1986. *See Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC,* 478 U.S. 421,  426-40, 443-83 (1986) (discussing respondents' history in the New York State and federal courts from 1964 through 1983 and affirming contempt findings, comprehensive affirmative action remedial relief, and appointment of a Special Master with broad powers).

AAAPO established, as a goal of the court's remedial orders, "that all members and apprentices of Local 28 share equitably in all available employment opportunities in the industry." AAAPO ¶ 3. In furtherance of that goal, AAAPO imposed obligations upon respondents that were applicable for all apprentices, not just nonwhite apprentices. To this end,

6

the JAC was required to "take all reasonable steps to insure that *all* apprentices indentured receive adequate employment and training opportunities." (Emphasis added). *Id.* ¶ 25. Such steps included requiring the JAC to "assign apprentices for employment in a ratio of not less than one apprentice for every four journeymen working" ("1:4 ratio"), *id.* ¶ 22, and directing that "each Local 28 employer shall be required to maintain a ratio of one apprentice for every four journeymen," *id.* ¶ 43.

The importance of the apprenticeship program as a pathway to union membership cannot be emphasized enough. Although there are several ways for an individual to become a member of Local 28, the majority are admitted through its apprenticeship program. *See EEOC v. Local 638 . . . Local 28*, 1982 WL 445, at *1 - *2. The apprenticeship program is thus a crucial entry point for nonwhites looking to become journeypersons.

AAAPO's 1:4 ratio seeks to ensure that employers hire more apprentices. *EEOC v. Local 638 . . . Local 28*, 753 F.2d at 1187. The Second Circuit characterized the ratio as "a critical element in the AAAPO," and warned the union that "[employers] will have the court's assistance in overcoming union opposition . . . ." *Id.*

## 2.    Local 28's and the JAC's History of Contempt

Over the years, the court has issued a series of orders to remedy Local 28's and the JAC's past discrimination and to ensure their compliance with court-imposed remedies. Much of the litigation to date has resulted from Local 28's non-compliance with these orders.

In 1982, Judge Werker held respondents in contempt for, among other things, adopting a policy of underutilizing its apprenticeship program to the detriment of nonwhites. *See EEOC v. Local 638*, 1982 WL 445 at *2. The following year, in 1983, Judge Werker once again found

Local 28 and the JAC in contempt and adopted AAAPO. *See EEOC v. Local 638 . . . Local 28*, 753 F.2d at 1177.  In 1993, another round of contempt proceedings was initiated.  The court ultimately found Local 28 in contempt and ordered additional remedial measures. *See EEOC v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n*, 889 F. Supp. 642 (S.D.N.Y.1995) (Carter, J.), *aff'd in part, rev'd in part sub nom., EEOC v. Local 638*, 81 F.3d 1162 (2d Cir.1996). *See also EEOC v. Local 638, Local 28 of Sheet Metal Workers' Int'l Ass'n*, 13 F. Supp.2d 453 (S.D.N.Y. 1998) (Local 28 found in contempt again), *aff'd in part, rev'd in part, and remanded*, 170 F.3d 279 (2d Cir. 1999).

In 2004, the court considered another contempt motion against Local 28.  This time the motion was brought by plaintiff-intervenors, representing the Hispanic Society and a certified class of nonwhite Local 28 members. *See EEOC v. Local 638 etc.; Local 28 of the Sheet Metal Workers' Int'l Ass'n*, 2003 WL 21767772 (S.D.N.Y. July 30, 2003) (Carter, J.) (intervention motion granted); *EEOC v. Local 638*, 2004 WL 2414013 (S.D.N.Y. Oct. 28, 2004) (Carter, J.) (class certification motion granted).  In 2005, the court, yet again, found Local 28 in contempt and issued further remedial orders. *See EEOC v. Local 638 . . . . Local 28*, 2005 WL 823915 (S.D.N.Y. Apr. 8, 2005) (Carter, J.) (contempt for significant work hours disparities between white and nonwhite members).

## FACTS

On or about February 16, 2007, Vamco entered into a subcontract agreement with WDF Inc., whereby it agreed "to fabricate, furnish and install certain sheet metal ductwork" at a construction project involving a public college located in Manhattan.  (Amended Compl. ¶¶ 10-

11).  Vamco provided these services to the construction project until approximately April 7, 2011.  (*Id.* ¶¶ 11-12).

Vamco hired Local 28 journeypersons to work on the project.  (*Id.* Exh. "1" (September 25, 2008 Letter from A. Vettorino to K. McPike)).  Seeking to comply with the 1:4 ratio required by the AAAPO, Vamco asked respondents for apprentices.  (*See* Amended Compl. ¶¶ 13-17).  In particular, Vamco made written requests to Local 28 for apprentices on September 25, 2008, November 12, 2008, February 17, 2009 and August 26, 2009 (collectively, *id.* Exh. "1").  Vamco also made "numerous oral requests."  (*Id.* ¶ 15).  Local 28 did not respond to any of Vamco's requests.  (*Id.* ¶ 16).

On September 10, 2010, Vamco received an undated letter from Robin Delk, the JAC Administrator, notifying it that AAAPO required employers to adhere to the 1:4 ratio of apprentices to journeypersons.  (*Id.* ¶ 18; Exh. "2").  The letter also stated that since the letter's recipient was "under your 4 to 1 ratio," the JAC would be assigning apprentices.  (Amended Compl. ¶ 19; Exh. "2").  That same day, Vamco sent a letter to the JAC in reply, requesting five apprentices by September 17, 2010.  (Amended Compl. ¶ 21; Exh. "3").

On September 21, 2010, two of the five apprentices requested by Vamco appeared at the jobsite.  (Amended Compl. ¶ 23).  The following day, respondents removed those apprentices from the assignment.  (*Id.* ¶ 24).  Subsequently, the respondents reassigned the apprentices to the jobsite, but by October 5, 2010, they removed the apprentices again without any explanation.  (*Id.* ¶ 25).

Vamco filed a grievance with the Local 28 Joint Adjustment Board, which determined that since the collective bargaining agreement ("CBA") did not require Local 28 to assign apprentices to contractors, there was no violation of the CBA.  (*Id.* ¶¶ 36-37; Exh. "6").

Thereafter, Vamco filed the instant complaint, alleging that it suffered damages in the amount of $520,871.13, because of respondents' failure to assign apprentices as required by AAAPO. (Amended Compl. ¶¶ 45, 47; Exh. "4"). These damages represent the monies Vamco was compelled to spend because it had to hire Local 28 journeypersons in place of the lower wage apprentices. (Amended Compl. ¶¶ 40-44; Exh. "4").

## DISCUSSION

Respondents bring their motions to dismiss pursuant to Rule 12(b)(6). The JAC also invokes Rule 12(b)(1), seeking dismissal for a lack of subject matter jurisdiction. In support of its Rule 12(b)(1) motion, the JAC argues that the court and the Special Master lack subject matter jurisdiction to consider Vamco's complaint as Vamco is not a party to AAAPO and does not have any contractual relationship with Local 28. (JAC Memorandum of Law in Support of Motion to Dismiss dated April 30, 2012 ("JAC Mem. of Law") at 3; Reply Memorandum of Law dated July 12, 2012 ("JAC Reply Mem. of Law") at 2-4). The JAC also contends that Vamco has never been a member of the Sheet Metal and Air-Conditioning Contractor's Association of New York City and is not included in the list of contractors that appears in Appendix "A" of the AAAPO. (JAC Mem. of Law at 3). Additionally, even if Vamco was a party, it is not a member of the class protected by the AAAPO and so is not entitled to damages for any violations. (*Id*. at 4).

Local 28, though not invoking Rule 12(b)(1), also attacks Vamco's complaint on the ground that it is not a party to the AAAPO. It further asserts that Vamco lacks standing to sue for violations of the AAAPO since it is not an intended beneficiary. (Local 28 Memorandum of

Law dated April 30, 2012 ("Local 28 Mem. of Law") at 5-7; Local 28 Reply Memorandum of Law dated July 13, 2012 ("Local 28 Reply Mem. of Law") at 6-7.

Apart from these contentions, respondents maintain that Vamco's complaint fails to state a viable cause of action for various reasons, as stated below, including the question of whether the JAC was required to assign any apprentices at all. Local 28 reiterates that Vamco is not the beneficiary of the 1:4 apprentice to journeyperson ratio and lacks a contractual relationship with Local 28. (Local 28 Mem. of Law at 8; Local 28 Reply Mem. of Law at 7-9).

For the reasons set forth below, respondents' contentions are without merit.

## I.   STANDARDS FOR MOTIONS TO DISMISS UNDER RULE 12(b)(1) AND RULE 12(b)(6)

The standards for determining the sufficiency of a complaint under Rule 12(b)(1) and Rule 12(b)(6) are "identical." *Moore v. Painewebber, Inc.*, 189 F.3d 165, 169 n.3 (2d Cir. 1999). *See also Building Indus. Elec. Contractors Assoc. v. City of New York*, 678 F.3d 184 (2d Cir. 2012); *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 117 (2d Cir.), *cert. denied*, 540 U.S. 1012 (2003). The factual allegations stated in the complaint must be accepted as true and all reasonable inferences must be drawn in favor of the complainant. *Building Indus. Elec. Contractors Assoc.*, 678 F.3d 184; *Lerner*, 318 F.3d at 117. If the allegations do not state a "plausible" claim on their face, the complaint must be dismissed. *Building Indus. Elec. Contractors Assoc.*, 678 F.3d 184 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The inquiry, then, is not whether the complaint states a strong case but whether the complainant "is entitled to offer evidence to support the claim." *Kaible v. U.S. Computer Group, Inc.*, 27 F. Supp.2d 373, 376 (E.D.N.Y. 1998) (internal quotations omitted). The possibility that "[r]ecovery may appear remote and unlikely on the face of the pleading" is immaterial. *Id.*

Accordingly, for purposes of deciding these motions, the allegations in the complaint are assumed to be true.

In deciding a motion to dismiss, courts are required to limit their analysis to allegations in the complaint, including any documents incorporated therein.   Matters outside the pleadings cannot be considered.  *See, e.g., SEC v. McDermott*, 2004 WL 385197, at *2 (S.D.N.Y. Mar. 1, 2004); *Bolanos v. Norwegian Cruise Lines Ltd.*, 2002 WL 1465907, at *4 (S.D.N.Y. July 9, 2002), *aff'd*, 2004 WL 769766 (S.D.N.Y. Apr. 12, 2004); *Kaible v. U.S. Computer Group, Inc.*, 27 F. Supp.2d at 376-77.  Short of converting the motion into one for summary judgment, courts must exclude the additional evidence and decide the matter on the pleadings.  *McDermott*, 2004 WL 385197, at *2; *Bolanos*, 2002 WL 1465907, at *4 n.10.  To the extent that both Vamco and respondents refer to factual matters beyond the complaint and its attachments, such matters will be disregarded, and only the facts contained in the pleadings will be relied upon to resolve the issues raised by respondents' motions to dismiss.[5]

As noted, though, Vamco's complaint and respondents' motions to dismiss must also be seen through the prism of the court's orders and its findings concerning respondents' past conduct.  *See* "Background," *supra*.  Those orders and findings, among other things, inform as to the meaning of the terms, requirements, and rights set forth in or established by AAAPO.

---

[5]  Any reference in this Opinion and Order to certain facts that have been mentioned in the parties' respective contentions that go beyond the four corners of the complaint are discussed solely for the purpose of contextualizing the positions of the parties. *See Amaker v. Weiner*, 179 F.3d 48, 50-51 (2d Cir. 1999) (conversion to motion for summary judgment is not required unless the extrinsic evidence is relied upon "to decide the motion to dismiss.").

## II.   SUBJECT MATTER JURISDICTION AND STANDING

Respondents argue that Vamco is not a party and, therefore, it has no right to file a complaint alleging a violation of the AAAPO.  Their respective efforts to deny Vamco the right to complain about a violation of AAAPO, however, contravenes the language of the complaint process established in paragraphs 62 and 63 of AAAPO.  As evidenced by its remedial objectives, and the reasoning in the court's opinions, AAAPO's language must be interpreted so as to effectively realize its goals.  A party's conduct that thwarts, frustrates, impairs or impedes obtaining those goals can result in liability for violating the court's order.  *See EEOC v. New York Times Co.*, 196 F.3d 72, 79-80 (2d Cir. 1999) (where a party in a Title VII case determined who would get work opportunities and that determination "undermined the achieving of the goals expressed in the decree," such conduct violated the decree).

In brief, Vamco has standing to file its complaint and the court and Special Master have jurisdiction to hear and determine it because AAAPO, by its explicit language, permits Vamco to file the instant complaint, thereby making it a party, albeit limited in scope.

### A. Employers Who Employ Local 28 Members to Undertake Sheet Metal Work, But Who Lack a Contract with Local 28, Can Be Limited Parties to AAAPO

Respondents' contention that AAAPO applies only to contractors in a contractual relationship with Local 28 unjustifiably limits AAAPO's intended scope.  The pertinent provisions of AAAPO were intended to apply to any contractor that employs Local 28 journeypersons on projects falling within Local 28's jurisdiction, whether or not it had a contract with Local 28.

The language of AAAPO's complaint provisions is very broad in that any party, employer, contractor, interested person or any affected individual may submit a complaint to the Special Master complaining about a violation of AAAPO. *See* "Background" n. 3, *supra* (quoting AAAPO ¶¶ 62 and 63). This is precisely what Vamco has done. Those provisions further charge the Special Master with hearing and determining those complaints. *Id. See also* "Background" n. 4, *supra* (quoting O&J ¶ 15).

AAAPO's provisions must also be understood within the context of its remedial nature. To further the goal of providing adequate employment and training for apprentices, AAAPO paragraph 25 orders the JAC to "take all reasonable steps to insure that all apprentices indentured receive adequate employment and training opportunities." AAAPO also requires Local 28 to send "to each contractor who currently employs" or who "in the future employs Local 28 members" a copy of AAAPO so that all such contractors understand their obligations. AAAPO ¶ 67.

AAAPO's remedial objectives are most keenly realized in the 1:4 apprentice to journeyperson ratio, *id.* ¶¶ 22 and 43(a). The JAC itself recognized the importance of this obligation since it notified Vamco that it was "required to maintain a ratio of [one] apprentice for every [four] journeymen." (Amended Compl. Exh. "2").

Even if, assuming *arguendo*, the word "contractor" was restricted to contractors in signed agreement, Vamco was certainly an "employer" or "interested person" under the complaint provisions of AAAPO. As an employer required to be in compliance with AAAPO's 1:4 ratio (*see* Amended Compl. ¶ 18, Exh. "2"), *see also EEOC v. Local 638 . . . Local 28*, 753 F.2d at 1187 ("AAAPO requires . . . the sheet metal employers to hire[] one apprentice for every four journeymen"), it could be subject to liability if: a) it was on notice of the requirements of the

14

court order, *see* AAAPO ¶ 67 (requiring Local 28 to provide copies of relevant court orders to contractors); and b) then failed or refused to comply with AAAPO, *see* AAAPO ¶ 43(b) (in order to be excused from AAAPO's ratio requirement, a contractor has to apply to the Special Master for relief). As a result, Vamco is, at the very least, an "interested person" within the meaning of the AAAPO complaint procedures. *Cf. Cook County, Ill. v. U.S. ex rel. Chandler*, 538 U.S. 119, 125 (2003) (discussing the history of a corporation being considered a "person").

Moreover, apart from AAAPO's broad definition of "contractor," Vamco is bound by AAAPO's 1:4 ratio under the principles of privity. *See generally, D'Arata v. New York Cent. Mut. Fire Ins. Co.*, 76 N.Y.2d 659, 664 (1990) (privity, although "an amorphous concept not easy of application," exists where a nonparty has "a relationship with a party to the prior litigation such that [its] own rights or obligations in the subsequent proceeding are conditioned in one way or another on, or derivative of, the rights of the party to the prior litigation."). An employer lacking a CBA with Local 28 is nonetheless in privity with it if it has a significant relationship with Local 28 because it is undertaking sheet metal work within Local 28's jurisdiction and obtains its workforce from Local 28 or its court ordered referral system. In short, if an employer doing sheet metal work in Local 28's jurisdiction employs Local 28 journeypersons to do that work, that employer is in privity with Local 28 and is bound by those provisions of AAAPO related to, at least, filing reports pursuant to AAAPO ¶ 52, *see EEOC v. Local 638*, 1993 WL 385764 (S.D.N.Y. Sep. 21, 1993), and complying with AAAPO's apprentice to journeyperson ratio provisions.

In the circumstances presented here, Vamco hired a number of Local 28 journeypersons to perform sheet metal work in New York City, Local 28's jurisdiction. Thus, Vamco was in privity with Local 28 and was obligated to comply with the applicable provisions of AAAPO or

else incur liability for non-compliance. *See, e.g., EEOC v. Local 638 . . . Local 28 (In the Matter of Elgin Manufacturing)* (Administrator's Report dated  December 23, 1980), *aff'd, EEOC v. Local 638 et al*, 71 Civ. 2877 (HFW) (S.D.N.Y. Jan. 20, 1981, unpublished) (Werker, J.) (non-party contractors employing Local 28 members are in privity with Local 28 and, if on notice of the court's orders, can be found in contempt for violating those orders); *EEOC v. Local 638 . . . Local 28 (In the Matter of L.A. Fiberglass, Inc.)* (Administrator's Report and Recommendation dated July 30, 1980), *aff'd, EEOC v. Local 638 et al*, 71 Civ. 2877 (HFW) (S.D.N.Y. Sep. 1, 1981, unpublished) (Werker, J.) (same). *Cf. Drywall Tapers of Greater New York Local 1974 of I.B.P.A.T., AFL-CIO v. Local 530 of Operative Plasterers and Cement Masons Int'l Ass'n*, 1986 WL 14711, at *13-*14 (E.D.N.Y. Dec. 16, 1986) (court had jurisdiction over nonparty individual and nonparty contractor who were in "active concert or participation" with defendant).

The court's later opinions also confirm that contractors who employ Local 28 members – other than those listed in the AAAPO and those that had a written contractual relationship with Local 28 – have obligations and rights under the court's orders. *See E.E.O.C. v. Local 638 ...Local 28 of the Sheet Metal Workers' Int'l Ass'n*, 13 F. Supp. 2d 453, 466-67 (S.D.N.Y. 1998), *aff'd in part, rev'd in part and remanded*, 170 F.3d 279 (2d Cir. 1999) (while contractors in signed agreement with Local 28 can hire journeypersons directly, "out-of-town contractors that are not parties to its CBA, . . . non-signatory contractors, and . . . contractors under International Agreement" must obtain their Local 28 journeyperson employees through the court mandated job referral system). *See also* April 3, 2009 Stipulation and Order Regarding Amendments to the Voluntary Referral Hall Rules ¶ 12 (requiring out of town or non-signatory contractors, and signatories to the International Agreement "who are not parties to the Local 28 CBA" to fill their jobs through the Hall), and ¶ 35 ("any party, member, or any other affected person or entity" can

file a complaint with the Special Master "regarding the interpretation, applications, administration or implementation of the Hall Rules and Procedures."). Thus, Vamco has standing to file its complaint, and the court and the Special Master have subject matter jurisdiction to consider Vamco's complaint.

### B. Vamco is a Party for the Limited Purpose of Filing a Complaint as to Violations of AAAPO Directly Implicating Its Rights and Obligations

As a separate argument, respondents assert that Vamco is not a party to the underlying lawsuit, and is not named as a party in AAAPO. Thus, it is contended, neither the Special Master nor the court have subject matter jurisdiction to decide Vamco's complaint. The gravamen of respondents' argument is that jurisdiction only lies if a person or entity is a direct party to the original lawsuit, or is named as a party in some aspect of that action. However, the concept of a "party" is not so narrowly drawn that it applies only to a person or entity named in the main suit or in the court's remedial orders.

Courts have applied a broader definition of "party" so that it also encompasses entities or persons seeking relief who were not named in a previous proceeding. *See, e.g., Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002) (class member who was not named representative and who failed to properly intervene in the class action was nonetheless a "party" for purposes of appealing approval of the class settlement); *SEC v. American Bd. of Trade*, 830 F.2d 431, 441-42 (2d Cir. 1987) (upholding civil contempt remedies imposed *sua sponte* by the district court against defendant and in favor of non-parties to original proceeding), *cert. denied sub nom., Economou v. SEC*, 485 U.S. 938 (1988); *Southmark Properties v. Charles Housing Corp.*, 742 F.2d 862, 869-70 (5th Cir. 1984) ("the word 'parties' does not refer to formal or paper parties, but to parties in interest," i.e., persons actively involved with a party).

17

However, an entity seeking relief, while considered a "party" under certain circumstances, may not be so designated in other contexts. In *Devlin*, the Supreme Court pointed out that "[t]he label 'party' does not indicate an absolute characteristic, but rather a conclusion about the applicability of various procedural rules that may differ based on context." 536 U.S. at 10. With regard to Vamco's complaint, AAAPO's complaint mechanism renders an entity, such as Vamco, a party for the limited purpose of challenging a violation of AAAPO that directly implicates the rights and obligations of the complaining entity.

## C. Vamco Has Standing Even Though It Is Not an Intended Beneficiary of AAAPO

Local 28's assertion that Vamco is not the "intended beneficiary" of the AAAPO and, therefore, lacks standing to maintain this action misses the point. There is no doubt that AAAPO was not intended to provide broad substantive protections to Vamco. The class to be protected was and is Local 28's nonwhite members and apprentices.

Nonetheless, in order to provide the benefits of the court orders to Local 28's nonwhite journeypersons and apprentices, the court made it quite clear that Local 28's contractors and employers were essential players since they provided the employment and on-the-job training opportunities to apprentices. *See, e.g., EEOC v. Local 638 . . . Local 28*, 753 F.2d 1172, 1187 (2d Cir. 1985). Thus, in the instant proceeding, the fact that Vamco was the not the "intended beneficiary" of AAAPO is simply not relevant in the context of its complaint under AAAPO.

What is relevant is that AAAPO paragraphs 22 and 43 imposed apprentice hiring obligations upon Vamco as a contractor who employed Local 28 journeypersons to perform sheet metal work within Local 28's jurisdiction. Further, AAAPO paragraphs 62 and 63 provide employers, such as Vamco, with the right to file a complaint with the Special Master in the event

of a dispute with Local 28 or the JAC about an alleged violation of a provision of AAAPO that directly affects complainant's obligations or rights under AAAPO.  *See* Section II.A. and B, *supra*.  Thus Vamco, although not an intended beneficiary of AAAPO, does have standing to file a complaint.

### D.  Vamco's Damages Claim is Sufficient to Survive a Motion to Dismiss

Respondents further argue that since Vamco is not an intended beneficiary of the AAAPO and had no right to apprentices, it cannot claim or obtain damages, even if the AAAPO were violated as alleged.  Again, as previously discussed, AAAPO requires Vamco to comply with its remedial apprentice to journeyperson ratio.  *See* Section II.A., *supra*.  As a result, Vamco has standing to complain about violations by party where it may be adversely affected by such violations.  *See id.  See also* Section II.B. and C, *supra*.

Vamco's claim for monetary damages under AAAPO's complaint procedures, (Amended Compl. ¶¶ 40 - 45; Exh. "4"), is one of first impression.  That fact, however, does not make the claim implausible.  Moreover, respondents' attempt, to cut off Vamco's damage claim as a matter of law finds no support in the court's opinions or orders.  As the Second Circuit pointed out in *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 131 (2d Cir. 1979), if a violation of a court order is found, a plaintiff "should be afforded an opportunity to prove its damages."

For the foregoing reasons, the JAC's Rule 12(b)(1) motion to dismiss, and Local 28's motion to dismiss based upon a lack of standing, are denied.

## III.   SUFFICIENCY OF VAMCO'S COMPLAINT IN STATING A CAUSE OF ACTION

Respondents advance several grounds for their contention that Vamco's complaint fails to state a viable claim.  The JAC maintains that: 1) Vamco had never contacted it and requested apprentices; 2) Local 28 never signed a jobsite agreement with Vamco and so was not a party to the CBA; and 3) even if Vamco was a party to the CBA, there is no requirement that the JAC provide apprentices to employers.  (JAC Mem. of Law at 4-5).  Local 28, on the other hand, claims that AAAPO requires the JAC, not the union, to assign apprentices to employers.  (Local 28 Mem. of Law at 8; Local 28 Reply Mem. of Law at 8).  In addition, Local 28 repeats that Vamco is not entitled to the benefit of the apprentice to journeyperson ratio assignment, and that it lacks a contractual relationship with Local 28.  (Local 28 Mem. of Law at 8-9; Local 28 Reply Mem. of Law at 8-9).

For the reasons set forth below, Vamco's complaint sufficiently states a cause of action to survive respondents' motions to dismiss.

### A.   Responsibility for Referring Apprentices

Respondents stress that because they are separate legal entities, there can be no liability for the conduct of the other.  Their assertions raise the issue of which entity is responsible for assigning apprentices to employers within Local 28's jurisdiction and whether only the entity charged with making apprentice job referrals faces liability for a violation of that responsibility.

Where there is no evidence that a union and apprenticeship program had an agency relationship, acted in concert, or were an integrated enterprise, the acts of one entity cannot be imputed to the other. *See, generally, York v. Tennessee Crushed Stone Ass'n*, 684 F.2d. 360, 362

(6th Cir. 1982).  But since this is an evidentiary question, not one of law that can be determined on a motion to dismiss, the facts must be developed in this case as to whether, under agency principles, the acts of one respondent can be imputed to the other.  *See, e.g., EEOC v. Charleston Elec. Joint Apprenticeship Training Comm.*, 587 F. Supp. 528, 531 (S.D. W. Va. 1984) (finding a genuine issue of material fact as to whether the joint apprenticeship training committee was an agent of union even though they were separate legal entities).

Nevertheless, there are scenarios where one entity can be jointly and severably liable for the actions of a legally separate entity.  For example, a legally separate entity can be liable for a violation of a court order if it aids an enjoined party to contravene that order.  *Cf. Regal Knitwear Co. v. NLRB* , 324 U.S. 9, 13-14 (1945) (active concert language prevents non-parties from assisting party to evade an order); *Vuitton et Fils S.A.*, 592 F.2d at 129-30 (remanding to determine whether non-party aided and abetted party's violation of court's orders); *GMA Accessories, Inc. v. Eminent, Inc.*, 2008 WL 2355826, at *12 - *13 (S.D.N.Y. May 29, 2008) (citing cases explaining the application of the concepts of, among others, "acting in concert or participation," "aiding and abetting," and "acting as an agent").

While, in a motion to dismiss, a court must assume the facts alleged in a complaint to be true, it must nonetheless assess the allegations to determine if they are plausible on their face.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Respondents have both intertwined obligations, *see, e.g.,* O&J ¶¶ 11, 12 and 21(g)–(j); AAAPO ¶¶ 3, 45 – 46, 58, as well as separate legal responsibilities, *e.g., compare* O&J ¶¶ 1 – 6

*with* ¶¶ 8 – 10; *compare* AAAPO ¶¶ 8 – 32 *with* ¶¶ 33 – 41.  Further, the Second Circuit and this court have found that respondents have at times acted jointly or in concert to deny apprentices access to job assignments.  *See, e.g., EEOC v. Local 638 . . . Local 28*, 753 F.2d at 1180 (2d Cir. 1985); *EEOC v. Local 638 . . . Local 28*, 565 F.2d 31, 35 (2d Cir. 1977); *EEOC v. Local 638 . . . Local 28*, 401 F. Supp. at 487.

To remedy their discriminatory behavior, the court directed that "Local 28 and [the] JAC . . . are under an obligation to take *affirmative* action to recruit [and] train apprentice[s] . . . ." *Local 28*, 401 F. Supp. at 488 (emphasis added).  Time and again, the Second Circuit reaffirmed the district court's directive and rejected attempts by the JAC and Local 28 to evade responsibility, plainly stating that "[i]t is essential that all apprentices have some opportunity to work . . .," *Local 28*, 565 F.2d at 35, and that the JAC and Local 28 have "the duty to comply with the court's orders . . . ," *Local 28*, 753 F.2d at 1182.

### 1.    The JAC

For purposes of defeating a motion to dismiss, Vamco's complaint sufficiently alleges that the JAC violated AAAPO to Vamco's detriment.  Specifically, the complaint states that the JAC was aware of Vamco's need for apprentices, at least since September 2010, when the JAC Administrator sent a letter to Vamco advising Vamco that it needed to comply with the 1:4 apprentice journeyperson ratio. (Amended Compl. ¶¶ 18-19; *id.* Exh. "2").  Instead of providing five apprentices, as Vamco had requested, so that it could meet the 1:4 ratio, respondents only provided two on September 21, 2010.  (Amended Compl. ¶ 23).  Compounding matters, respondents then withdrew those two apprentices on September 22 without explanation, reinstated them, and removed them again by October 5.  (*Id.* ¶¶ 24-25).  The complaint also

specifies the amount of damages Vamco allegedly sustained as a result of respondents' failure to provide apprentices.  (*Id.* ¶¶ 39-47; *id.* Exh. "4").

Whether the JAC knew or should have known about Vamco's earlier requests to Local 28 officials regarding apprentice assignment (*id.* ¶ 15; *id.* Exh. "1") or the extent, if any, that Local 28 was acting as an agent of the JAC in the handling of Vamco's apprentice requests, assignments, and later removal of apprentices, is a factual question that cannot be adjudicated on a motion to dismiss.  As framed, Vamco's complaint sufficiently states a cause of action against the JAC.

### 2.    Local 28

AAAPO is the operational order for carrying out the injunctive provisions in the O&J. *See* O&J ¶¶ 13-15, 21 and 22.  As previously noted, AAAPO expresses the court's goal "that all members and apprentices of Local 28 share equitably in all available employment opportunities in the industry."  AAAPO ¶ 3.  Although AAAPO orders the JAC to "take all reasonable steps to insure that all apprentices indentured receive adequate employment and training opportunities," *id.* ¶ 25, neither that directive nor the JAC administered apprentice referral system, *see id.* ¶ 26, insulates Local 28 from liability for action it takes, or fails to take, that adversely affects employment opportunities for apprentices.

As far back as 1985, the Second Circuit alerted Local 28 about its responsibility under AAAPO to refer apprentices to work opportunities.  *See Local 28*, 753 F.2d at 1187.  Expressing its view that the 1:4 ratio is "a critical element" of the district court's remedial efforts, the Second Circuit warned Local 28 that it "faces further contempt penalties if it does not cooperate

in meeting the ratio . . . ."  *Id.*  On another occasion, the court warned Local 28 about its indifference to its court ordered obligations:

> Local 28 has shown continued passivity in the face of continuing work hours disparity and an unwillingness to properly confront its court ordered responsibilities.  Local 28 has done little to properly address the operative provisions of the O&J and AAAPO and has failed to convince the court that it is committed to providing equal work opportunities.

*Local 638 etc.; Local 28 of the Sheet Metal Workers' Int'l Ass'n,* 2005 WL 823915, at *10.

In light of these warnings, Local 28, including its officers and business agents, knew or should have known that it could not act in a manner that impaired or impeded the JAC in meeting its responsibility to assign Vamco one apprentice for every four journeypersons.  *See generally,* AAAPO ¶ 67 (union required to provide a copy of AAAPO to each officer and business agent).  *Cf. Backo v. Local 281, United Broth. Of Carpenters and Joiners of America,* 438 F.2d 176, 180-81 (2d Cir. 1970) *cert. denied,* 404 U.S. 858 (1971) (individual officials, as agents of union, may be liable for contempt if legally identified with defendant and where, by virtue of position in the union, they "had power to effect compliance with the order."); *N.L.R.B. v. Sequoia Dist. Council of Carpenters, AFL-CIO,* 568 F.2d 628, 633 (9th Cir. 1977) (officers of labor union can be liable in contempt "for disobeying an order directed to the union").

Vamco's complaint alleges that, as of September 25, 2008, it started sending letters to Local 28 officials asking for apprentices because it had more than four journeypersons.  (*See* Amended Compl., Exh. 1).  Consequently, the union was on notice that the 1:4 ratio was not being met.  Yet, according to the complaint, Local 28 simply ignored Vamco's requests.  (Amended Compl. ¶¶ 16, 23-25).  While the JAC is a separate legal entity, the union cannot, by means of a motion to dismiss, successfully claim it did not have any legal responsibility.  *Cf. Maalik v. International Union of Elevator Constrs., Local 2,* 437 F.3d 650, 653 (7th Cir. 2006)

(union liable for its decision to do nothing in the face of race and sex discrimination against its member by the employer). What the union knew, what its obligations were, and its relationship with the apprentice program are not purely legal questions, but are questions of fact that cannot be decided on a motion to dismiss.

Furthermore, in its complaint, Vamco alleges that "Respondents" failed to provide apprentices in violation of AAAPO paragraph 43. (Amended Compl. ¶¶ 13-14). Vamco further alleges that apprentices were placed by "Respondents," (Amended Compl. ¶ 23), and removed by "Respondents," (id. ¶ 24). Thus Vamco, which utilized the word "respondents" to encompass both Local 28 and the JAC, (id. ¶ 5), is alleging that both Local 28 and the JAC were involved in the: a) failure to assign apprentices for a number of years; b) placement of an inadequate number of apprentices; and c) later removal of apprentices from Vamco's employ. Put another way, the complaint effectively alleges that the union was acting as an agent of, or in concert or in active participation with, the JAC in violating AAAPO's apprentice assignment provisions.

Taking Vamco's allegations as true, for purposes of Local 28's motion to dismiss, it is a plausible argument that the union is jointly or severally liable for violating, or joining in the violation of, the apprentice to journeyperson job assignment provisions of AAAPO. Consequently, Vamco's complaint sufficiently states a cause of action.

## B.   Respondents' Remaining Contentions

Respondents' contentions that no cause of action lies because there was no jobsite agreement or other contractual relationship between Vamco and Local 28 is also without merit. The obligation of the JAC to assign apprentices to contractors, such as Vamco, does not need to emanate from the CBA or a job site agreement. Rather, as explained above, *see* Section II.A.

*supra*, the obligation, and possible liability, derives from AAAPO. Thus, the absence of a CBA or jobsite agreement has no effect on the legal sufficiency of the allegations in Vamco's complaint.

Similarly, the JAC's argument that the CBA does not require it to provide employers with apprentices is irrelevant. (JAC Mem. of Law at 5). The JAC postulates, without basis, that Vamco's complaint has to arise from a contractual relationship. As previously discussed in detail, *see* Section II.A. *supra*, Vamco's complaint is brought pursuant to AAAPO (Amended Compl. ¶ 1), and alleges a violation of AAAPO's 1:4 ratio, (*id.* ¶¶ 14, 18, 38). The JAC has an affirmative duty to insure a ratio of one apprentice for every four journeypersons. AAAPO ¶ 43. *See also id.* ¶ 22 (imposing a duty upon the JAC to survey contractor workforces and to assign sufficient apprentices to meet the 1:4 ratio). Moreover, AAAPO paragraph 25 unequivocally states that the JAC must take "all reasonable steps" to insure that all apprentices receive sufficient employment and training opportunities. The JAC's letter that was received by Vamco, which makes specific reference to AAAPO's ratio requirement, (Amended Compl. Exh. "2"), evidences the JAC's acknowledgement of its obligations.

For its part, Local 28 repeats its claim that "Vamco is not entitled to the benefit of the apprentice-journeyman ratio." (Local 28 Mem. of Law at 8). Local 28 previously made this argument when asserting that Vamco did not have standing to complain of a violation of the ratio. (*Id.* at 6). For the same reason that Vamco has standing to file a complaint, *see* Section II.A., B. and C., *supra*, the complaint states a viable cause of action arising from the allegations that respondents failed to assign apprentices to the Vamco job site in accordance with AAAPO's provisions.

## CONCLUSION

Respondents' respective motions to dismiss Vamco's complaint are denied in their entirety.

The parties have a right to appeal this decision to the court.  O&J ¶ 15; AAAPO ¶ 65. Pursuant to Fed. R. Civ. P. 53(f)(2), the parties shall have 21 days from the date that a copy of this Opinion and Order is served to file objections to, or make a motion to adopt or modify, this Opinion and Order with The Honorable Lewis A. Kaplan, U.S.D.J.

**IT IS SO ORDERED**

Dated:  New York, New York
       August 9, 2012

David Raff (DR 4299)
Special Master
470 Park Avenue South
3rd Floor North
New York, New York 10016
(212) 732-5400

## CERTIFICATE OF SERVICE

David Raff, being duly appointed Special Master in <u>EEOC and the City of New York v. Local 638...Local 28 et. al.</u>, 71 Civ. 2877 (LAK-MHD),. pursuant to Rule 53 of the Federal Rules of Civil Procedure, by Order dated September 2, 1975, herein certifies that I served a true copy of the annexed Opinion and Order by electronic mail.

Date Mailed: August 9, 2012

> Wendell Shepherd, Esq.
> Barnes, Iaccarino & Shepherd LLP
> 258 Saw Mill River Road
> Elmsford, NY 10523
> Email: wshepherd@bislawfirm.com
>
> Counsel for Respondent Local 28
>
> William Rothberg, Esq.
> 16 Court Street, Suite 2200
> Brooklyn, New York 11241
> Email: bill@rothberglawfirm.com
>
> Counsel for Respondent Local 28 JAC
>
> Brendan R. Wolf, Esq.
> Fox & Kowalewski, LLP
> Four Old Route 146
> P.O. Box 958
> Clifton Park, New York 12065-0802
> Email: brw@fkllplaw.com
>
> Counsel for Complainant Vamco
>
> Joshua Rubin, Esq.
> New York City Law Department
> Affirmative Litigation Division
> 100 Church Street, Room 3-153
> New York, NY 10007
> Email: jrubin@law.nyc.gov
>
> Counsel for Plaintiff City of New York

Louis Graziano, Esq.
Gillian Thomas, Esq.
Equal Employment Opportunity Commission
33 Whitehall St., 5th Floor
New York, New York  10004
Email: louis.graziano@eeoc.gov, gillian.thomas@eeoc.gov

      Counsel for Plaintiff EEOC

Kristen Clarke, Esq.
Office of the Attorney General of the State of New York
120 Broadway
New York, New York 10271
Email: Kristen.Clarke@ag.ny.gov

      Counsel for Plaintiff New York State Division of Human Rights

Tricia B. Sherno, Esq.
Debevoise & Plimpton
919 Third Avenue
New York, NY  10022
Email: tsherno@debevoise.com

      Counsel for Plaintiff-Intervenors

Ray McClain, Esq.
Lawyers' Committee for Civil Rights Under Law
1401 New York Ave., NW
Suite 400
Washington, DC 20005-2124
Email: RMcClain@lawyerscommittee.org

      Counsel for Plaintiff-Intervenors

Dated:   New York, New York
        August 9, 2012

                                 David Raff
                                 Special Master