IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) | Case No. 71-cv-02877(LAK)(RWL) |
| | ) ) | |
| v. | ) ) ) | |
| INTERNATIONAL ASSOCIATION OF BRIDGE STRUCTURAL AND ORNAMENTAL IRONWORKERS LOCAL 580, et al., | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## CONSENT DECREE

In 1971, the United States Attorney General filed a complaint alleging that Defendant

Local 580 of the International Association of Bridge, Structural, and Ornamental Ironworkers

("Local 580") was engaged in a pattern or practice of resistance to the full enjoyment by

nonwhite individuals of rights guaranteed to them by Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000e, et seq.  Defendants Joint Apprentice Journeymen Educational Fund of the

Architectural Ornamental Iron Workers Local 580 ("AJEF") and Allied Building Metal

Industries ("Allied") were named as defendants in the complaint solely for purposes of relief.

Plaintiff United States Equal Employment Opportunity Commission was later substituted as the

plaintiff.

Unless otherwise noted, in this Consent Decree, "Defendants" refers only to Local 580,

the AJEF, and Allied, and does not refer to any other defendant in the litigation consolidated

1

under case number 71 Civ. 2877. The "Parties" refers only to the EEOC and those three Defendants who are a party to this Decree.

A prior Consent Judgment was agreed to by the Parties and was entered by the court on July 21, 1978. Extensive litigation ensued over the next several decades, including contempt findings that were entered against the Defendants in the 1980s. In 1988 a special master was appointed pursuant to Rule 53 of the Federal Rules of Civil Procedure to oversee the Defendants' compliance with the judgments and orders entered in this case.

The last finding of contempt against Local 580, entered nearly a decade ago, concerned the union's conduct in the mid-1990's. The many years since that time have seen substantial increases in minority (defined for the purposes of this litigation as Black or Hispanic) membership in Local 580 and a corresponding increase in equal opportunities for Black and Hispanic individuals to participate in the ornamental ironwork trade on a non-discriminatory basis. Presently, approximately 44% of journeypersons and 52% of apprentices in Local 580 are Black or Hispanic. Local 580's first minority Business Agent has been serving in that capacity since May 2015. Currently seven of the 21 individuals serving on the Executive Board of Local 580 and in other elected positions established by the Union Constitution are Black or Hispanic.

The EEOC is satisfied that these indicators reflect an ongoing commitment by Local 580 and the AJEF to provide equal membership and employment opportunities to Black and Hispanic workers, as well as a good faith commitment to cooperate with the EEOC in furtherance of the goal of equal employment opportunity.

After extensive negotiations, the Parties have agreed that it is fair, reasonable, and in the public interest to modify and eventually to conclude oversight of the Defendants by the Government and by the Court. Accordingly, the EEOC and Defendants have agreed that this

action should be resolved by entry of this Consent Decree ("Decree"), and therefore do hereby stipulate and consent to the entry of this Decree as final and binding on the Parties, including Defendants' successors, assigns, subsidiaries, and any other entity or entities with which any Defendant may merge or consolidate.  The Parties have agreed that this Decree may be entered into without findings of fact and conclusions of law having been made and entered by the Court.

In consideration of the mutual promises and agreements contained in this Decree, the sufficiency of which is hereby acknowledged, the Parties agree as follows, the Court finds appropriate, and it is therefore ORDERED, ADJUDGED AND DECREED that:

<u>GENERAL PROVISIONS</u>

1.      This Decree is final and binding on the Parties.  This Decree is a complete resolution of all claims for liability or relief against Defendants set forth in the complaint in this action, as well as of all claims for liability or relief for any violation by Defendants of any prior order or judgment in this action.  This Decree does not resolve any charge of discrimination that may be pending before the EEOC, or any charge that may be filed in the future.

2.      The Parties agree, and the Court finds, that this court has jurisdiction of the subject matter of this action and of the Parties, that venue is proper, and that all administrative prerequisites have been met.

3.      By mutual consent of the Parties, and upon approval by the Court, this Decree may be amended in the interests of justice and fairness and to facilitate execution of this Decree's provisions.  Except as specifically noted elsewhere in this Decree, no waiver, modification, or amendment of any provision of this Decree will be effective unless made in writing, approved by all Parties to this Decree, and approved or ordered by the Court.

4.      Whenever any Defendant is required to send documents, reports, forms, or other

materials to the EEOC pursuant to this Decree, the Defendant shall send such matters by electronic mail to Sebastian Riccardi at sebastian.riccardi@eeoc.gov and "Consent Decree Monitor" at decreemonitor.nydo@eeoc.gov.  All documents to Local 580 and the AJEF should be sent to cpoh@cohmlaw.com and plb@cohmlaw.com and to the Allied to sdavi@alliedbuilding.org.

INJUNCTIVE RELIEF

5.      Defendants are permanently enjoined from:  (a) discriminating against any person with respect to recruitment, selection into Local 580 or the AJEF, or employment opportunities with employers with whom Local 580 has a collective bargaining agreement on the basis of race or national origin, (b) limiting or restricting participation in any program of the AJEF on the basis of race or national origin; and (c) failing to refer or select for employment any individual on the basis of such individual's race or national origin.

6.      Defendants are permanently enjoined from engaging in retaliation of any kind against any person because such person has opposed any practice prohibited by Title VII; filed a charge of discrimination under Title VII; testified or participated in any manner in any investigation, proceeding, or hearing under Title VII, including the litigation of this action; or asserted any rights under Title VII, this Decree, or under any prior order in this litigation.

ADOPTION, POSTING, AND DISTRIBUTION OF POLICY<br>PROHIBITING EMPLOYMENT DISCRIMINATION

7.      Within five (5) business days of the entry of this Decree, Defendants Local 580 and the AJEF will adopt or affirm (and provide the EEOC a copy of) an antidiscrimination policy that prohibits discrimination on the basis of race and national origin, outlines a procedure for any member or applicant for membership to make a complaint or report of discrimination ("Antidiscrimination Policy").  The Antidiscrimination Policy shall, at a minimum:

a. Expressly prohibit all forms of discrimination and retaliation prohibited by Title VII;

b. Inform members and prospective members that they are entitled to make complaints or reports of unlawful employment discrimination (whether by Local 580, by the AJEF, or by any employer) to Local 580, to the AJEF, and to the EEOC, and provide appropriate contact information for each of those;

c. Inform members and prospective members that Local 580 and the AJEF will protect the confidentiality of individuals who report discrimination or participate in a investigation, to the greatest possible extent;

d. Inform members and prospective members that Local 580 and the AJEF will notify them about the status of their complaint or report, the results of the investigation thereof, and any corrective and preventative action taken; and

e. Clearly identify individuals within Local 580 and the AJEF to whom complaints or reports may be made, which shall include:  the Business Manager of Local 580, the EEO/Compliance Officer (see Paragraph 18, below), the Director of Local 580 AJEF, and any additional individuals Local 580 or the AJEF deems appropriate.

8.      Local 580 shall distribute a copy of the Antidiscrimination Policy to all current union members within ten (10) business days of the entry of this Decree, and thereafter shall provide a copy of the Antidiscrimination Policy to all subsequently admitted members within five (5) business days of the date they join the union.  Local 580 will post the Antidiscrimination Policy on its website.

9.      Within ten (10) business days of the entry of this Decree, Defendants Local 580

and the AJEF will post a copy of the Antidiscrimination Policy in locations where notices to union members are customarily posted.

10.     As part of any materials regularly distributed to prospective union members who have submitted an application for membership, Local 580 shall summarize the Antidiscrimination Policy and inform prospective union members how to obtain a copy of the policy.

11.     Within five (5) business days of the entry of this Decree, Defendants Local 580 and the AJEF will conspicuously display and maintain EEO posters in locations where notices to union members are customarily posted.

12.     Within five (5) business days of the entry of this Decree, Defendants Local 580 and the AJEF will post the "Notice of Lawsuit and Settlement," attached as Exhibit A, in locations where notices to union members are customarily posted.

13.     Nothing in this Decree represents an endorsement by the EEOC or by the Court that Defendants have been or are generally in compliance with federal anti-discrimination laws.

<u>RECRUITMENT OF PRE-APPRENTICES</u>

14.     In 2018 Local 580, with the approval of the EEOC and Special Master, created a pre-apprentice program.  Pre-apprentices are recruited into a one-year program in which they have the opportunity to obtain basic safety training and related certifications and to also obtain work experience.  Pre-apprentices who successfully complete the one-year pre-apprentice program are automatically indentured as the 1st year Local Apprentice class.

15.     Defendants shall recruit at least 40% of each new pre-apprentice class from the recruitment sources listed in Exhibit B.  That percentage and the list of recruitment sources that count toward this requirement may be modified by agreement of Local 580, the AJEF, and the

EEOC, or, for good cause shown, by leave of court.

16.     As part of any public recruitment effort for new pre-apprentices (i.e., leading to the opportunity to take a pre-apprentice exam), the AJEF and Local 580 shall take steps to advertise that are comparable in scope to those taken prior to the entry of this Decree, except as may otherwise be agreed, in advance, by Local 580, The AJEF, and the EEOC.

17.     Defendants shall provide the EEOC with 90 days' written notice prior to implementation of any changes to any aspect of the Defendants' practices or procedures with respect to the recruitment and selection of new pre-apprentices, including, without limitation, changes to forms, advertising efforts, exams, and selection criteria.

<u>LOCAL 580 EEO/COMPLIANCE OFFICER</u>

18.     Within sixty (60) days of the entry of this Decree, Local 580 shall appoint an Equal Employment Opportunity and Compliance Officer ("Compliance Officer"), who shall be a full-time employee of Local 580 with relevant EEO, labor rights, and/or human resources experience and qualifications.  The selection of a Compliance Officer must be approved in advance by the EEOC.  The Compliance Officer's duties shall include:

a.  Being available to all members of the union to discuss any concern about possible discrimination or harassment of any member or any failure to follow the Referral Hall Rules (see Paragraph 31, below);

b.  Maintaining familiarity with the requirements of Title VII and this Decree, any EEO protections that may exist in any collective bargaining agreement, and the Referral Hall Rules;

c.  Informing any member who contacts the Compliance Officer about the member's rights under Title VII, under this Decree, and under any collective

bargaining agreement, including the member's right to contact the EEOC and state/local fair employment practices agencies.

d.   Investigating any reports or complaints of discrimination against or harassment of any member, and any reports or complaints of violations of the Referral Hall Rules;

e.   Providing notice to, consulting with, and making appropriate recommendations to the Business Manager of Local 580 or to the AJEF, as appropriate, about any reported discrimination, harassment, or violation of the Referral Hall Rules;

f.   Preparing a written summary of:  any report or complaint of discrimination or harassment or of a violation of the Referral Hall Rules; the investigation thereof; and any conclusions or recommendations made by the Compliance Officer;

g.   Assisting appropriate union officials in connection with any grievance, EEOC charge, or other effort (formal or informal) that the union may initiate to vindicate a member's rights;

h.   Participating in the training required by Paragraph 23, below (which may, with the EEOC's consent, include serving as the trainer required by that Paragraph) and providing or assisting with the provision of the training required by Paragraph 25, below; and

i.   Performing such other duties as Local 580's Business Manager may determine to be appropriate.

19.   The Compliance Officer's responsibilities under this Decree encompass all forms

of unlawful employment discrimination experienced by any member, including discrimination and harassment by any employer or on any job site, as well as any suspected discrimination or harassment by Local 580, by the AJEF, or by any of their officers, members, or employees.

20.     Local 580 shall provide the Compliance Officer such resources, including any outside training, as are reasonably necessary to enable the Compliance Officer to carry out his or her duties effectively.

21.     Defendants shall cooperate reasonably with any request of the Compliance Officer in connection with his or her duties under this Decree, and the Compliance Officer shall have access to all relevant records of Local 580 and the AJEF.

<u>TRAINING</u>

22.     Within sixty (60) days of the entry of this Decree, and again during the second year of the Term of this decree, Local 580 and the AJEF will provide live, in-person training to their officers, employees, forepersons, and stewards on federal laws prohibiting discrimination in employment, with a special emphasis on Title VII, as well as training on the requirements of this Decree.  Newly elected/appointed/hired officers, employees, and stewards will be given the training within thirty (30) days after assuming their positions.

23.     Local 580 and the AJEF shall obtain the EEOC's approval of their proposed trainer and the content the trainer proposes to present before the commencement of any training session required under Paragraph 22, above.  Defendants shall submit the name, address, telephone number, resume and training proposal of their proposed trainer (including copies of all materials the trainer proposes to display, distribute, or otherwise present) to the EEOC at least twenty (20) business days prior to the proposed date of each training session.  The EEOC shall have ten (10) business days from the date it receives the information described above to accept or

reject the proposed trainer and/or the content the trainer proposes to present.  In the event the

EEOC does not approve Defendants' proposed trainer and/or content, Defendants shall have five

(5) business days to identify an alternate trainer and/or revise the content its trainer proposes to

present.  The EEOC shall then have five (5) business days from the date it receives the

information described above to accept or reject the alternate trainer and/or content.  If the EEOC,

Local 580, and the AJEF cannot agree on a trainer or training content through this process, they

may seek the Court's assistance.

24.     Local 580 and the AJEF shall maintain attendance records identifying in legible

form the name and job title or position of the attendees at each session and also containing the

signature of each attendee, as well as copies of all training materials presented.  Within five (5)

business days of each training session, Defendants will provide the EEOC a copy of the

attendance records and all materials used during the training session.

25.     The AJEF shall additionally ensure that during the first year of the Term of this

Decree (see Paragraph 34, below), all apprentices receive at least one hour of training about their

EEO rights both as union members and as employees, including with respect to all aspects of the

employment relationship (referral/hiring, firing/layoff, harassment on the job, reasonable

accommodations, etc.).  During the second and subsequent years of the Term of this Decree, the

AJEF shall ensure that all new apprentices receive such training during their first year as

apprentices.  The training required by this Paragraph shall, at a minimum, include the following

features:

        a.     It will describe or portray real-world examples of conduct that is unacceptable

            in the workplace, including examples involving employment practices based

            on categories protected by federal law, with specific examples of unlawful

hiring practices and of comments or treatment that could constitute

discrimination because of race or national origin;

b.    It will be interactive, providing apprentices opportunities both to answer and

ask questions about how to recognize and respond to potentially problematic

behavior;

c.    It will explain the avenues available for reporting incidents of harassment or

discrimination, and affirm that the individuals who make complaints or

reports cannot legally be subjected to any form of retaliation or reprisal; that

Local 580 and/or the AJEF will timely investigate any complaint or report of

unlawful discriminatory conduct and take action where appropriate; that Local

580 and the AJEF will keep such complaints and reports and the identities of

employees who make them confidential to extent practicable; and

d.    It will encourage bystander reporting, that is, it will convey that all individuals

in the workplace are encouraged to take action if they observe any

problematic behavior directed toward other union members, and it will

explain how they should do so.

<u>RECORDKEEPING AND REPORTING</u>

26.    During the Term of this Decree, Defendants Local 580 and the AJEF shall

maintain and make available for inspection and copying by the EEOC written records of every

complaint or report (oral or written, formal or informal, internal or external) by any union

member or prospective union member of:  any unlawful discrimination, any violation of the

Referral Hall Rules, or any retaliation prohibited by this Decree.  For each such complaint or

report, such records shall include: (a) the name of the member or prospective member who made

the complaint or report and that person's address and telephone number; (b) the date of the complaint or report; (c) a written description of what was alleged in the complaint or report; (d) a written description of the resolution or outcome of the complaint or report, including a description of what actions, if any, Defendants took; and (e) if the complaint or report was made in written form, a copy thereof.

27.     Defendants shall require their officers, members, and employees, upon request by the EEOC, to cooperate reasonably with and to be interviewed by the EEOC for purposes of verifying compliance with this Decree.  Such cooperation shall also include providing the EEOC, upon request, access to any non-privileged records reasonably relevant to verifying compliance with this Decree.  Defendants shall permit a representative of the EEOC to enter any Defendant's premises on five business days' notice, during normal business hours, for purposes of inspecting any relevant documents or records or otherwise verifying compliance with this Decree; provided, however, that the EEOC may enter a Defendant's premises without advance notice, during normal business hours, for the purpose of verifying compliance with the notice posting requirements of Paragraphs 9-12.

28.     Local 580 and the AJEF shall furnish to the EEOC the following written reports semi-annually ("Semi-Annual Report") during the Term of this Decree.  The first Semi-Annual Report shall be due six (6) months after entry of the Decree.  Subsequent Semi-Annual Reports shall be due every six (6) months thereafter, except that the final Semi-Annual Report shall be due thirty (30) calendar days prior to the expiration of the Decree.  Each such Semi-Annual Report shall contain:

> (a)     Copies of the records described in Paragraphs 18(d)-18(f) & 26, above, for the six (6) month period preceding the Semi-Annual Report or a certification by

12

Defendant that no complaints or reports of discrimination or Referral Hall

Rules violations were received during that period;

(b)     A certification by Local 580 and the AJEF that the Notice required to be

posted pursuant to Paragraph 12 of the Decree remained posted in the manner

required during the entire six (6) month period preceding the Semi-Annual

Report;

(c)     A certification by the AJEF that it is in compliance with the apprentice

training requirement set forth in Paragraph 25.

29.     Local 580 and the AJEF shall continue to maintain, preserve for the Term of this

Decree, and make available to the EEOC electronic records of:  (a) all union members, including

their names, complete contact information, race/national origin, sex, and journeyperson or

apprentice/pre-apprentice status; (b) all employment of union members, including employer

name, work site, start and end dates of each spell of employment, hours worked (including,

separately, any overtime or double-time hours), whether or not the spell of employment resulted

from referral through the Referral Hall, and the reason for the termination of the employment, if

available; (c) all records concerning pre-apprentice selection, including without limitation,

application forms, examinations administered, the disposition of each application, notes, and so

forth.

30.     The recordkeeping requirements set forth above are not intended to reduce the

recordkeeping efforts and practices that were in place for Local 580 and the AJEF as of the

beginning of 2020 with respect to any matter that is the subject of this Decree.  Local 580 and the

AJEF shall provide the EEOC ninety (90) days' written notice where practicable before

implementing any significant change in such recordkeeping practices (including, without

limitation, changes to the data stored, the manner of recording or entering data, the computer systems used to main such data, or the vendor(s) used in connection with recordkeeping).

REFERRAL HALL

31.     Defendants shall continue to utilize a referral hall for journeypersons, apprentices, and pre-apprentices, which shall operate in accordance with the Referral Hall Rules set forth in Exhibit C.  The Referral Hall Rules may be amended by agreement of the Parties or, for good cause shown, with leave of court.

32.     Within ninety (90) days of the entry of this Decree, Local 580 shall retain an outside auditor who shall conduct audits of Defendants' compliance with the Referral Hall Rules. The selection of an auditor must be approved in advance by the EEOC.  Defendants shall provide the auditor with access to all records reasonably necessary to the auditor's work.  The auditor may contact and interview individual union members if the auditor determines that doing so is useful.  The auditor's report shall be completed, if feasible, within 180 days of the entry of this Decree and shall be provided contemporaneously to the EEOC and to Defendants.  The auditor's reports shall be made available to union members upon request.  A subsequent audit shall occur 18 months after the entry of this Decree.  If any audit identifies material noncompliance, an additional, follow-up audit shall be conducted within 180 days thereafter if the EEOC so requests.

MEMBER ASSISTANCE PLAN TRANSITION

33.     Within sixty (60) days after entry of this Decree, Local 580 and the AJEF shall assume responsibility for providing counseling services, comparable to the Member Assistance Plan services ("MAP Services") presently provided by the Special Master's office, to journeypersons and apprentices.  Local 580 and the AJEF may satisfy this requirement by

14

directly employing staff and/or by contracting with an appropriate outside entity that is engaged

in the business of providing counseling services.  Local 580 and the AJEF shall obtain the

EEOC's approval of their proposed counseling services prior to retaining any person or entity to

provide those services.  Defendants shall submit a counseling services proposal with the name,

address, telephone number, resume and description of planned counseling services provider(s) to

the EEOC within ten (10) business days of the entry of this Decree.  The EEOC shall have five

(5) business days from the date it receives the information described above to accept or reject the

counseling services proposal.  In the event the EEOC does not approve Defendants' counseling

services proposal, Defendants shall have five (5) business days to modify their proposal.  If the

EEOC, Local 580, and the AJEF cannot agree on a counseling services proposal within five (5)

business days thereafter, they may seek the Court's assistance.

<u>TERM OF DECREE AND DISPUTE RESOLUTION</u>

34.     Except for the injunctions set forth in Paragraphs 5 & 6, which are permanent, this

Decree will in all other respects remain in effect for three (3) years from the date of entry

("Term"), provided, however, that if, at the end of the Term of the Decree, any disputes about

compliance with the Decree remain unresolved (see Paragraph 35), the Term of the Decree shall

be automatically extended until such time as all such disputes have been resolved.  This case

may be administratively closed but will not be dismissed.  The Decree will expire by its own

terms at the end of the Term, without further action by the Parties or the Court, unless the

duration of this Decree has been extended automatically  pursuant to this Paragraph or by other

order of the Court.

35.     If during the Term of this Decree the EEOC believes that any Defendant has

failed to comply with any provision(s) of the Decree, the EEOC shall notify that Defendant of

the alleged non-compliance and shall afford that Defendant at least thirty (30) days to remedy the

non-compliance or satisfy the EEOC that Defendant has complied.  If Defendant has not

remedied the alleged non-compliance or satisfied the EEOC that it has complied within thirty

(30) days, the EEOC may apply to the Court for relief, including modification of this Decree or

other relief that the Court determines to be appropriate.

36.     No Party will contest the validity of this Consent Decree or that the Court has

jurisdiction to enforce this Decree and its terms for all purposes including, but not limited to, the

entering of all orders, judgments and decrees as necessary to implement the relief provided

herein for the duration of this Decree.  A breach of any term of this Decree by Defendant shall be

deemed a substantive breach of this Decree for which EEOC may bring an enforcement action.

## TERMINATION OF SPECIAL MASTER APPOINTMENT

37.     The appointment, pursuant to Rule 53 of the Federal Rules of Civil Procedure, of

a special master (sometimes also referred to in this litigation as the "Administrator") is hereby

terminated with respect to the three Defendants who are party to this Decree, except as noted in

Paragraph 38, below.

38.     To provide for an orderly transition of the MAP Services currently provided by

the Special Master with respect to Local 580 and the AJEF (see Paragraph 33, above), the

Special Master may continue to provide such services for a period of up to sixty (60) days after

entry of this Decree.

39.     Defendants Local 580 and the AJEF shall bear only those costs reasonably

incurred by the Special Master that are agreed to in advance by Local 580, the AJEF, and the

EEOC in connection with winding down his operations, the orderly transition of the MAP

Services, and the transfer of records.  In the event the EEOC, Local 580, the AJEF, and the

16

Special Master have conferred but cannot reach such an agreement about these matters within thirty (30) days of the entry of this Decree, any of them may seek the assistance of the Court.

40.     The Special Master shall submit any final invoices to Local 580 and the AJEF within ninety (90) days of the entry of this Decree, or such other period as may be agreed to by the Special Master, Local 580, and the AJEF or directed by the Court.

<u>EFFECT ON PRIOR ORDERS AND JUDGMENTS AND OTHER PARTIES</u>

41.     With respect to the three Defendants who are party to this Decree, this Decree supersedes and replaces all prior judgments and orders that have been entered in this case. Accordingly, upon entry of this Decree, this Decree exclusively sets forth all injunctions and other requirements that continue to apply to those Defendants going forward, except that any costs the Special Master reasonably incurred with respect to the Defendants prior to the entry of this Decree and that he submits to Local 580 and the AJEF within the time specified in Paragraph 40 shall remain due.  Local 580 and the AJEF retain the right to object to and seek relief from the Court concerning the amount or reasonableness of any invoice.

42.     Nothing in this Decree modifies any existing judgment, order, or other obligation with respect to any of the other plaintiffs and defendants in the litigation that has been consolidated under case number 71 Civ. 2877 and who are not one of the Parties to this Decree ("Other Parties").  If any provision of any such judgment or order is rendered impractical or otherwise impaired with respect to Other Parties as a result of the inapplicability of such provisions to the Defendants, the EEOC and the Other Parties shall confer and propose to the Court any needed modification to the relevant judgment or order.

<u>MISCELLANEOUS PROVISIONS</u>

43.     Each Party shall bear its own expenses, attorneys' fees, and costs.

44.     The terms of this Decree are and shall be binding on the present and future directors, officers, managers, agents, successors and assigns of each Defendant.  At least twenty-one (21) days prior to any transfer of any Defendant's interests, business, or operations, that Defendant shall provide a copy of this Decree to any potential transferee or other potential successor, and shall contemporaneously notify the EEOC of the nature and anticipated date of the transfer and the identity of the transferee or other potential successor.

45.     Whenever this Decree provides for modification of any requirement by agreement of some or all of the Parties, such agreement must be in writing and shall be effective only after all of the required Parties have agreed in writing.

46.     When this Decree requires a certification by any Defendant of any fact(s), such certification shall be made under oath or penalty of perjury by an officer or management employee of that Defendant.

APPROVED IN FORM AND CONTENT:

**FOR PLAINTIFF U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

JEFFREY BURSTEIN
Regional Attorney

SEBASTIAN RICCARDI
Trial Attorney

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, Fl. 5
New York, NY 10004
Tel: (929) 506-5340
Fax: (212) 336-3623
Email: sebastian.riccardi@eeoc.gov


JUSTIN MULAIRE
Supervisory Trial Attorney

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
230 S. Dearborn St., Ste. 2920
Chicago, IL 60604
Tel: (312) 872-9666
Email: justin.mulaire@eeoc.gov

**FOR DEFENDANTS LOCAL 580 AND THE AJEF**

COLLERAN O'HARA & MILLS, LLP

CHRISTOPHER P. O'HARA
100 Crossways Park Drive West, Suite 200
Woodbury, New York 11797
Tel.: (516) 248-5757
Fax: (516) 742-1765
Email: cpoh@cohmlaw.com
*Attorneys for Local 580 and the AJEF*

**FOR DEFENDANT ALLIED**

ALLIED BUILDING METAL INDUSTRIES, INC.


_____
STEVEN N. DAVI
Executive Director and General Counsel
270 Madison Avenue, Suite 401
New York, NY 10016
Tel: (212) 697-5551
Fax: (212) 818-0976


SO ORDERED, ADJUDGED AND DECREED this _____ day of _____, 2020.


_____
United States District Judge

# Exhibit A



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
For General Information: (800) 669-4000
TTY: (800)-669-6820
District Office: (212) 336-3721
General FAX: (212) 336-3625

## NOTICE OF LAWSUIT AND SETTLEMENT

This Notice is being posted pursuant to a Consent Decree, settling a lawsuit brought by the U.S. Equal Employment Opportunity Commission ("EEOC") against Local 580 of the International Association of Bridge, Structural, and Ornamental Ironworkers ("Local 580") and the Joint Apprentice-Journeymen Educational Fund of the Architectural Ornamental Iron Workers Local 580 ("AJEF"), in the United States District Court for the Southern District of New York (Civil Action No. 71-cv-02877). This lawsuit was brought by the federal government in 1971, alleging that Local 580 and the AJEF unlawfully discriminated against Black and Hispanic members and prospective members.

Federal law prohibits unions and employers from discriminating against union members, apprentices, pre-apprentices, and applicants for union membership. based on sex, national origin, religion, race, color, age, disability, or genetic information. Federal law also prohibits unions and employers from retaliating against individuals who complain about or oppose discrimination or participate in any way in the processing of a complaint.

Local 580, its officers, business agents and other employees, and the AJEF will support and comply with federal law prohibiting discrimination against any journeypersons, apprentices, pre-apprentices or applicants for its pre-apprenticeship program because of their race or national origin.

As part of the settlement, Local 580 and the AJEF:

> 1.      Will comply with federal law and not discriminate against journeypersons, apprentices, pre-apprentices, or applicants for its pre-apprenticeship program because of their race or national origin;

> 2.      Will hire an Equal Employment Opportunity and Compliance Officer who will receive and investigate any complaints or reports of discrimination by local 580, by the AJEF, or by any contractor;

> 3.      Will maintain and distribute written policies and procedures prohibiting discrimination and enabling members, apprentices, and pre-apprentices to file complaints;

> 4.      Will operate a Referral Hall on a non-discriminatory basis where members may obtain employment;

5. Will provide training on federal laws prohibiting employment discrimination to officers, employees, and stewards of Local 580 and AJEF, as well as to all apprentices;

6. Will permit the EEOC to monitor compliance with the Consent Decree; and

7. Will post and distribute this Notice.

Should you have a complaint of discrimination, you may report it to any EEOC office throughout the United States, including the New York District Office, at:

U.S. Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004
Phone: 1-800-669-4000
TTY (for hearing impaired):  1-800-669-6820 | ASL Video Phone (for hearing impaired): 1-844-234-5122
Website: http://www.eeoc.gov

Dated: _____

**THIS IS AN OFFICIAL NOTICE AND MUST NOT BE ALTERED OR DEFACED BY ANYONE OR COVERED BY ANY OTHER MATERIAL**

**This notice must remain posted for three years from date shown above, and most not be altered, defaced, or covered by any other material.  Any question concerning this Notice or compliance with its provision may be directed to the U.S. Equal Employment Opportunity Commission at the number listed above.**

# Exhibit B

RECRUITMENT SOURCES

- Helmets to Hardhats
- Opportunities Long Island
- Nontraditional Employment for Women (NEW)
- Construction Skills, Inc.
- Pathways 2 Apprenticeship (P2A)

# Exhibit C

REFERRAL HALL RULES

I. Overview

   A. Purposes of the System

      The purposes of the Referral System are to:

      1.  provide Local 580 journeypersons with a means of obtaining employment,

      2.  provide Local 580 pre-apprentices, apprentices, and journeypersons (collectively, "Local 580 members") with a more convenient means of obtaining job referrals (i.e., by telephone communication and physical presence in the referral hall),

      3.  ensure a fair and equitable distribution of available jobs within Local 580's work jurisdiction by making referrals in accordance with the rules and procedures set forth below and requiring all Local 580 contractors to hire their entire apprentice and pre-apprentice workforce and 65% of their journeyperson workforce through the Referral System,

      4.  ensure that  Local 580's quality and safety standards are maintained, and the specific needs and requirements of all Local 580 contractors are met, by referring qualified workers who possess the skills and certifications necessary for the job, and

      5.  provide, in conjunction with the computerized recordkeeping and monitoring system ("Recordkeeping System") a means by which Local 580 and the EEOC can monitor the distribution of jobs within Local 580's work jurisdiction and ensure that equal employment opportunities exist in the ornamental ironworking industry.

   B. Configuration of the System

      1. Equipment and Software

         (a) Local 580 has purchased the computer hardware and software and telephone lines and wiring necessary to set up the system and shall maintain them.

         (b) Local 580 will continue to develop the software necessary to operate the Referral System in a manner compatible with the Recordkeeping System so that:

            (i) the telephone "sign-ins" by Local 580 members are recorded electronically and the information received is entered into the Local 580 computer database,

            (ii) the telephone calls by Local 580 contractors are answered by the Local 580 Business Agents,

1

(iii) the separate lists of Local 580 pre-apprentices, apprentices, and journeypersons available for referral are generated by the Local 580 computer with the individuals ranked in accordance with the referral criteria set forth below, and

(iv) the referrals made each day are recorded and entered into the computer database.

2. Operation of the System

Local 580 has hired an additional employee to operate, monitor and maintain the Referral System and the Recordkeeping System. Communications with Local 580 contractors and the referrals of Local 580 members will be made by the Business Agents.

II. Referral and Employment Rules and Procedures

A. General Requirements

1. Once Local 580 journeypersons' employment with a particular contractor ends, they are permitted to seek employment:

(a) by referral through the Referral System, or

(b) by direct contact with the contractor, including shaping the job site.

2. Local 580 apprentices and pre-apprentices are permitted to seek employment only by referral through the Referral System.

3. All Local 580 contractors are required to use the Referral System unless they have been granted an exemption in accordance with paragraphs II.C.1-3, below.

4. Local 580 contractors may hire all forepersons directly or through the Referral System.

5. For the remaining Local 580 journeyperson workforce (excluding forepersons) on a particular job site, the employer:

(a) may hire 35% of the journeypersons directly or through the Referral System, and

(b) must hire the remaining 65% of the journeypersons through the Referral System.

6. Local 580's right to designate a shop steward on each job site in accordance with the collective bargaining agreement shall remain unaffected by these rules. If, however, Local 580 refers a journeyperson to the job site to be the shop steward (rather than

designate a journeyperson already employed at the job site as the shop steward), the journeyperson will be included within the 65% of the journeypersons required to be hired through the Referral System.

7. Contractors may transfer Local 580 workers already employed between job sites without restriction.

8. Once the employment relationship with a particular contractor ends:

> (a) apprentices and pre-apprentices are required to use the Referral System for their next job, and

> (b) journeypersons may be rehired by the contractor only in accordance with these referral procedures and rules.

B. Referral Procedures

1. Referrals of journeypersons shall be made on the basis of consecutive days on the Referral List.

2. Referrals for apprentices and pre-apprentices shall be made on the basis of hours worked on a rolling twelve (12) month basis in the order of 3rd/2nd/1st/pre-apprentice.

3. Local 580 members seeking work referrals must use the telephone-based Application to add his or her name to the Referral List.

4. Members will remain on the Referral List without taking any additional action and at any time may check their status and ranking through the on-line Application system.  The final ranking for the 15 Plus One (as described further herein) for each day will be established after 8 am. As referred to in II.B.19, members must promptly remove themselves from the list if they obtain employment by means other than the Referral Hall. They will remain on the Referral List for each consecutive day until they:

> (a) utilize the Remote Application to remove themselves from the Referral List, or

> (b) they report, or it is learned that they have obtained employment (whether or not obtained through the Referral Hall).

5. At the beginning of each working day, the system will generate:

> (a) a list of pre-apprentices and apprentices (with their class year indicated) ranked by hours worked on a rolling twelve (12) month basis and in the order of 3rd/2nd/1st/pre-apprentice; and

> (b) a list of journeypersons ranked in order of the date and time each registered for referral and indicating their particular work specialty, if any.

3

6.  Local 580 contractors seeking workers for available jobs must contact the Business Agents for referrals. The Business Agent fills the job from a list of the available members for pre-apprentices, apprentices and journeypersons (including work specialty requested) for that day and enters the job referral information into the computer database. This information will include:

(a) the contractor's name and identification number,

(b) the number and status (i.e. pre-apprentice, apprentice, or journeyperson) of the members referred,

(c) the particular work specialty, if any,

(d) the job location, and

(e) the time of the referral.

7. The Referral List for journeypersons is the List by precedent of who has been waiting the greatest number of days for a referral to work.  That Referral List continues day to day and changes as members on the top of the List get jobs and come off the List. Members are responsible for checking their status and placement on the Referral List. The electronic Application will begin placing automatic calls to all members on the 15 Plus One List (as defined below in Section IV, below) at approximately 9:00 AM (local time) on the first three business days of the member's eligibility to notify members of their rank and of the required appearance in the Physical Referral Hall at 501 West 42nd Street, New York, New York 10036 on the following business day. The member must answer the call to receive his/her notification.  The electronic Application places a total of three calls to all members on the 15 Plus One List at thirty-minute intervals, giving the member three opportunities to respond to the automated system. The 15 Plus One List is the top 15 people on the Referral List and the top 1 for each Specialty, as referred to herein.   The Specialties, all of which require a Certificate or other Credential, are as follows:

(a) welding (by the type of license/classification),

(b) adhesive anchors,

(c) rigging (multiple categories),

(d) signaling,

(e) Burning, Fire Watch,

(f) 16 Hour Suspended Scaffold, (Scaffold erector, suspended scaffold user, supported scaffold erector, supported scaffold user, to be identified in a drop down box format)

(g) M.T.A. Track Training (by type of training, i.e. NYC Transit, L.I.R.R., etc.), and

(h) 16 and 32 Hour Hoisting.

8. One individual cannot be the "Plus One" for more than one specialty. For example, if one individual has track training and scaffold erector certifications, he can only be the "Plus One" for either track training OR scaffold erection. The parties agree that this list may change based on the requirements of the industry going forward.

9. When a member reaches No. 15 or above (No. 14, etc.) on the list and has received an automatic telephone call alerting him/her of that status, that individual will be informed by that telephone call that he/she must attend the Physical Referral Hall in person.  If the individual has listed a Specialty category as described above, then that individual should appear at the Referral Hall when they are informed by the system that they are eligible as a "Plus One" in the Specialty ranking for that specific Specialty.

10. The parties expressly acknowledge that the 15 Plus One List is an effort to reduce the amount of time and travel expended by a member to obtain employment while allowing Local 580 to closely track and understand the employment of its membership through the Referral Hall.  Increased or decreased employment in the industry may result in Local 580 increasing the size of the lists (i.e. 20 Plus Two) or decreasing the size of the lists (i.e. 10 Plus One).  Local 580 can temporarily increase or decrease the size of the 15 Plus One List by 5 spots for a period of not more than thirty (30) days to respond to changes in work volume by providing notice to the EEOC.  Any increase or decrease in excess of 5 spots or in excess of thirty (30) days requires the consent of the EEOC.

11. In the event a contractor contacts the Union in advance requesting significant numbers of ironworkers in one day, Local 580 can, on a case-by-case basis, request additional members off the Referral List to meet that demand.

12. Once alerted by telephone, journeypersons on the 15 Plus One List show up to the Physical Referral Hall on a daily and continuing basis at the opening of the Physical Referral Hall at 5:00 AM. Upon arrival at the Physical Referral Hall, journeypersons are required to sign into the web-based electronic Application at the Physical Referral Hall and to identify themselves as present at that time.  (As specified in Section II.B.20, dobeypersons will not be referred to work until after all qualified Local 580 members have first been offered and refused the job opportunity.)

13. After appearance at the Physical Referral Hall, the Application will note the time the individual signs in with a time-stamp, and the Referral Hall Application will flag the member as Present.  Any member matched with a job request who is flagged as Present

may be referred to a job for which he or she is qualified at any time after 5 a.m. Individuals on the list and present at the Hall are sent out in order of their name on the Referral List if they are physically present as Present and in attendance at the Hall at the moment a job becomes available.

14. Local 580 will provide a visual interface with a wide Display Board broadcasting a dynamic view of specified member data for journeypersons in attendance at the Physical Referral Hall each morning.  The display is to be installed in the waiting area of the Physical Referral Hall to allow union members on the 15 Plus One List to monitor job referral progress. The Display Board will allow only those union members on the 15 Plus One List who are in attendance at the Physical Referral Hall to monitor (as it occurs each morning) who is being referred for jobs, their names, ranking on the Referral List, time of referral for job, time were Present with the time-stamp, and for the Specialty Ranking of members on the "Plus One List." The monitor will only display information for members that have signed-in to the electronic Application at the Physical Referral Hall and are presumed to be physically present that morning at the Physical Referral Hall.  The Display Board will also give each attending member at the Physical Referral Hall information on each individual's progress that morning by showing on the Board:

     (a) Member First and Last Name,

     (b) Member Specialties,

     (c) Member Rank on the Referral List,

     (d) Member Rank on the Specialty List, and

     (e) Time-Stamp as Present for that day.

15. The Physical Referral Hall will be operated in accordance with these rules requiring the contractors to contact the Business Agents for 65% of their new hiring needs.  Any member who has been separated from employment by a contractor and is subsequently hired by that or any other contractor is considered a new hire. Vacations of up to 30 calendar days (members may not be on the Referral Hall List while on vacation), Military Leave, Family Leave, Sick Leave, Disability, Workers' Compensation, and/or any other statutorily sanctioned or required leave are not considered separation from employment. Hirings from the Referral Hall may occur in any sequence as long as the contractors and Local 580 comply with that proportion of hires from the Referral Hall.

16. When an employment request cannot be filled through the Referral Hall within 72 hours the employer is free to hire Local 580 members directly, and such hires are not considered for the purposes of the 65/35 ratio. The system will document such occasions.

17. Contractors have the ability to reject a referral for cause subject to the grievance language and procedures of the Local 580 collective bargaining agreement.

18. More detailed Referral Hall rules governing the Application system, acceptance of jobs, penalties, contingencies about the process for registering information with the Referral Hall, responsibilities for being physically present at the Physical Referral Hall, the treatment of dobeyperson workers, and the registration of Specialties are contained in Section IV, below.

19. Once a journeyperson on the Referral List obtains employment by means other than referral, he or she shall promptly remove the member's name from the referral list.

20. Dobeypersons shall not be referred to work through the Local 580 Referral System and unless all qualified Local 580 members on the referral list have been offered and refused the job opportunity, or do not have the required skills for the job.

21. The parties acknowledge that the implementation of the computerized Referral Hall is being performed pursuant to a contract document with Data Research Group, an independent computer software company retained specifically for the production of this computer software program.  Modifications of the specifications for the system are subject to the review and approval of the parties. However, the parties agree that in the event that there is a conflict between the software specifications and these rules, then these rules are binding.

## C. Contractor Exemptions from Use of the System

1. Local 580 contractors who do not want to be required to use the Referral System for journeyperson hiring may seek an exemption by written application to the EEOC. A copy of the application for exemption shall be sent to Local 580, which shall be afforded an opportunity to comment on the request for exemption.

2. To obtain exemption approval from the EEOC, the contractor must submit and agree to be bound for the term of the exemption by a voluntary affirmative action plan that includes a requirement that the contractor make diligent, good faith efforts to employ a Local 580 journeyperson workforce that is comprised of no less than 44% minority workers.

3. If the contractor fails to make such diligent, good faith efforts during the term of the exemption or otherwise comply with its voluntary affirmative action plan, the EEOC may, after 14 days' notice and an opportunity to cure, rescind the contractor's exemption and the contractor will thereafter be required to hire Local 580 members only in accordance with these Referral Hall Rules.

## III. Monitoring and Verification

The proposed Referral System shall include an effective means of monitoring and verifying electronically the referrals made and ensuring the integrity of the System which includes providing designated personnel with access to all functions of the Referral Hall's tracking software. The Referral Hall's tracking software shall permit designated personnel to audit all

records, and review all additions, changes, or deletions to the 15 Plus One List and all Local 580 members' records

IV. Detailed Rules:

A. Journeyperson Ranking

The ranking of a journeyperson is calculated as follows:

1. The Referral List Placement Timestamp is the rank sort criteria: The first criteria for ranking the journeyperson is the date and time the journeyperson last placed him/herself on the Referral Hall's Referral List, typically using the Remote Telephone Application. The List continues to assign a rank number based on the date and time they added themselves to that List.  This is called the "first-in-first-out" or FIFO system: the earlier a journeyperson places him/herself on the Referral List, the higher the journeyperson's ranking will be.

2. Timestamp Present Each Day:  At the Physical Referral Hall there will also be a computer terminal permitting a member to log-in and note his or her presence at the Physical Referral Hall on each day, after he or she appears as listed on the 15 Plus One Referral List.  The 15 Plus One List is composed of the Local 580 members ranked number 1 to 15 on the Referral List, plus the highest ranked Local 580 member for each of the Specialties as set forth above in Paragraph 2. The member must sign-in as soon as appearing at the Physical Referral Hall and remain in the Referral Hall.  The Application will record the Timestamp of the member's sign-in at the Physical Referral Hall.  This Timestamp will be used to record and confirm an individual's physical presence at the time when a member is assigned a job.

3. 15 Plus One List:  The top 15 ranked members, plus enough members to supply one of each specialty are telephoned and alerted of their status on the List. They are then expected to appear at the Physical Referral Hall on a daily basis (consecutively) and punch into the electronic Application at the Physical Referral Hall to indicate that they are physically present on each given day.  A member will be alerted by telephone call as to his or her rank and of his or her required appearance at the Physical Referral Hall the next business day.  The telephone call alerting the member of his/her required attendance for the next business day will usually be placed at 9:00 AM (local time), after the close of operation of the Physical Referral Hall and if the member does not answer, calls will be placed again at 30 minute intervals thereafter at 9:30 AM and 10:00 AM, for a total of three telephone calls. This will be repeated for the first three days of eligibility.  The Application will also note and provide the time for the placement of the automated calls to each member called on a business day.  In determining the one for each specialty, the Business Manager will review the listed specialties.  Members maintain their eligibility each day by reporting to the Physical Referral Hall on each consecutive work day after they are first alerted by telephone that they reached the 15 Plus One List.  They may lose their status on that list if they do not initially and continue to report to the Physical Referral Hall during the period they are on the 15 Plus One List, as specified below at

paragraph 12(d) below. Members with 3 No Responses are automatically dropped to the bottom of the Referral List.

4. Assignment from Referral List: Together, the Referral List and the Time-Stamp are the sources for making job assignments each day for each given time a job becomes available that morning:  At that time, the member closest to the top of the Referral List who is physically present and in attendance with the proper credentials (according to the Time-Stamp) is assigned to the job.  For example, if the highest-ranking member is not present at the time of assignment, then the next highest-ranked member who is physically present at that moment will receive the job assignment.  Dobeypersons are assigned differently when appearing at the Physical Referral Hall, see below.

5. At the Union's request, the threshold for the 15 Plus One List may be reduced by some amount, where the Referral Hall administrator and/or Business Manager is confident and knowledgeable enough about the work flow and the need for General and Specialty workers such that a lower number of people may be telephoned and required to appear at the Referral Hall.  In such an instance, Local 580 will inform the EEOC.

B. Member Specialties:

1. All members are required to have at least an approved Site Safety Training Card pursuant to Local Law 196 and a minimum 16-hour Rigging Certification and may list one or more specialties.  A specialty represents a qualification to perform a specific type of work.  A member must have a valid certificate and credential for each specialty listed on his/her member profile.  The list of specialties appears at ¶5 of the Procedures, and for each claimed Specialty, a member will present a certificate of specialty skill.

2. The Referral Hall Application and designated Information System will record each specialty listed on a member profile.  The member must be sure to note and update any specialty and other profile information to assure proper ranking, because during the job referral process, the Referral Hall Application will use those listed specialties in determining eligibility for the Specialty List. The List and referral will be applied on the basis of the certificates and skills possessed by that member.  Members are responsible for accurately maintaining their list of specialties and certifications and notifying the Union of any change in status. Members may be subject to penalties for misrepresentation.

3. Specialties as demonstrated with a Certificate or other Credential will be verified by Local 580, and each certified specialty requires a record containing:

    (a) Specialty Name,

    (b) Certificate Effective Date,

    (c) Certificate Expiration Date, and

    (d) Scan Copy of Physical Credentials.

C. Physical Referral Hall and Specialty List

The top journeypersons of each specialty, unless already within the top 15 ranked journeypersons, are selected based on their respective ranking on the Referral list.  The Application will select the next journeyperson with the better rank.

D. Dobeyperson Ranking

Dobeypersons appear on a separate list consisting of only dobeypersons and receive special handling:  The special handling means that an eligible, interested, and properly qualified member on the Referral List always takes precedence before any dobeyperson in selection for any given job.  On each given day, no dobeypersons will be referred to work unless all qualified Local 580 journeypersons on the Referral Hall List and present at the Physical Referral Hall (including on Specialty Lists) first have been referred for work (whether from the 15 or Specialty List), or have been offered and refused the job opportunity, or after determination by the Business Manager that none of the physically present Local 580 journeypersons possess the specialty required by the contractor on the job request.

E. Job Requests

All job requests from the contractors are received and processed by Business Agents only.  Job Requests are submitted to Business Agents.  Job Requests are matched to members against required attributes (i.e. member category and specialties).  Members are referred to jobs on a first-in-first-out basis from the Referral List, as discussed above.

F. Referral Hall List Eligibility and Initial Placement

1. Eligibility for the Referral Hall List placement is determined by the following criteria:

(a) The member is enrolled in the Referral Hall;

(b) The member's union dues and specialty credentials are in order;

(c) The member's Union Status is Active; and

(d) The member is not currently employed.

2. Upon meeting all required eligibility criteria, a member must place him/herself on the Referral Hall List, at which time he or she will be assigned a rank on the Referral Hall List.  The member must then be sure to note and update any specialty license or certification and other profile information, so that the most current Specialty certifications will be considered and he or she will be ranked accurately on the Specialty lists.

G. Job Acceptance and the Referral Hall List

If a member accepts a job through the Referral Hall, the following rules shall apply:

1. The Business Agent selects Accepted from the Referral Results dropdown selection in the Application.

2. The Application changes the member's Referral Hall Status from "Eligible" to "Currently on the Job".

3. Members who accept a job from the Referral Hall List that lasts five (5) working days or fewer will be allowed to have their name returned to their original position on the Referral Hall List.  If the member returns to the Physical Referral Hall within five (5) working days because the job ends and seeks reinstatement to the Referral Hall list, the member retains his/her rank on the Referral Hall List for that five day period– the member has made a return within five working days so that he/she maintains her ranking on the Referral Hall List.  If the member works more than 5 days, he or she will begin again at the bottom of the Referral Hall List.  Members who return to the Hall in this period as a result of a Layoff "for cause" will begin again at the bottom of the Referral Hall list.

4. If a member finds a job by means other than the Referral Hall, he must report that to Local 580 and remove himself/herself from the Referral Hall List.

5. After the job finishes, the member is responsible for placing him/herself back on the Referral Hall List.

6. After placing him/herself on the Referral Hall List and receiving a rank, a member may at any time after be able to sign onto the Remote Electronic Referral Hall Application to review his or her rank and status.

H. Categories of Member Violations

The Application provides the Local 580 Referral Hall Administrator with the ability to report member violations. There are five types of violations that can be reported in the Referral Hall Application that result in member penalty:

1. Referral Hall Violation (invalid telephone number and list abuse),

2. Job Referral & Referral Hall Attendance Violation,

3. Job Refusal Violation (for insufficient reason),

4. Working while on the Referral Hall List, and

5. Failed Drug Test

These violations are described further below.

I. Referral Hall Requirements & Violations

When existing members place themselves back on the Referral Hall List after an absence from the List (either because of working or some other reason), the following rules will apply:

1. Members are also responsible for placing themselves back on the Referral Hall List after removing themselves from the list any reason other than the completion of a job.

2. A member may not remain on the Referral Hall List if currently employed by a union contractor.  If a member currently listed on the Referral Hall list obtains such employment, s/he must either promptly report this fact to the Local 580 Referral Hall Administrator to be taken off the Referral Hall List or call or go into the Internet Application to remove him/herself from the Referral Hall List.

3. The Local 580 Referral Hall Administrator and Business Agent will list those members as "invalid phone number" whom have provided an invalid phone number listed on their profile and/or failed to update their profile with a valid, working telephone number. The Business Manager will make efforts by mail or otherwise to obtain a working telephone number, and the member will be notified in writing that he or she has ten (10) business days from the date the notification was mailed to correct this problem.  The member will not be called for jobs during this time.  If the member fails to respond or provide a working and valid number, such is a Referral Hall violation, and he or she is subject to the penalties for that violation below.

J. Absences from the Referral Hall; Reasons for Absence & Penalty Occurrences

1. No one is required to appear at the Physical Referral Hall when they are not on the 15 Plus One List, and no penalties apply.  Members are not to shape the hall if they are not on the 15 Plus One List.

2. A member can request temporary removal from the 15 Plus One list in the event of an emergency.

3. If a journeyperson matched with a job request is on the 15 Plus One List and is absent from the Physical Referral Hall after 8:00 a.m., or if a member is flagged as Present in the Physical Referral Hall but is nevertheless absent during the actual job referral by the Business Agent or Administrator, the following rules will apply:

(a) The application will automatically flag member as Absent (with penalty) if a member that is matched before 8:00 a.m. with a job on the 15 Plus One List and is not flagged as Present in the Physical Referral Hall at the time of the referral.

12

(b) If a member was listed as Present but was nonetheless absent and unavailable at the time of job matching, he or she will not be included in any additional Job Matching during that same day, unless the member returns to the Physical Referral Hall, and is available to work, in which case the Absent (with penalty) flag will be removed and member will be marked as Present.

K. Job Referral Violation

1. Job Referral Violation is applied to a member that fails to show at the referred job. The violation will be recorded in the Application.

2. When processing a Job Referral Violation, the following rules will apply:

(a) The Local 580 Referral Hall Administrator must provide a comment to detail the reason for applying the violation.

(b) The Application will automatically update the count of the filled positions by subtracting any member(s) for whom the violation is assigned.

(c) If the contractor still requires a worker to fulfill the position, the Business Agent will perform a search for a matching member.

(d) If the contractor no longer requires this position to be filled, the Business Agent will make changes as necessary to the job request form.

(e) The Application will flag the job request and member record with a Job Referral Violation flag.

L. Job Refusals (With and Without Penalty)

1. In the event a member refuses a job, the Business Agent will search for the next available member matching job qualifications.

2. The Business Agent will record job refusals by members in the electronic Application when a member does not provide a valid reason for refusing a job.  The following rules apply when an individual refuses a job:

(a) The Business Agent must provide a comment detailing the reason for the job refusal provided by the member.

(b) The Application will count the number of Job Refusals.

(c)  No Penalty: Members will be allowed to refuse a job with no penalty for the following reasons:

13

(i) Distance to Job, where outside the 5 boroughs of New York City or more than 2 hours' travel distance from the Union Hall; or

(ii) Lack of SWAK or TWIC Card (security clearance).

3. Where there is no penalty, members retain their current ranking on the Referral Hall List and remain Eligible and may be considered for the next job referral.

M. Member Removal from the Referral Hall List and Potential Penalties

1. Under certain circumstances, the Local 580 Compliance Officer, after consultation with the Business Manager, is allowed to remove members from the Referral Hall List. A member may be removed from the Referral Hall List based on the following rules:

(a)  Upon change in member's Union Status to Suspended, Withdrawn, Retired or Deceased,

(b)  Upon a member's voluntary removal from the Referral Hall List for any other reason, or

(c)  Upon the fourth and any subsequent occurrence of any violation listed in the Member Violations Section below, if no penalty applied earlier for the same offense. Removals under this section will be automatic.

2. Under certain circumstances, the Local 580 Compliance Officer, after consultation with the Business Manager, is allowed to restore the member to the rank held prior to the event that removed the members from the Referral Hall List, such as where there was a mistake (including a member taking himself off the List in error). Such may also occur when a member was involuntarily discharged from a job by contractor for unwarranted cause (i.e. number of workers originally requested exceeded actual required number of workers causing some members being sent back to the Referral Hall). The Compliance Officer shall keep a log of all such restorations and the reason(s) for each restoration.

N. Member Violations

1. The Application provides the Local 580 Compliance Officer, after consultation with the Business Manager, with the ability to report member violations. As referred to above, there are five types of violations that can be reported in the Referral Hall Application that result in member penalty:

(a) Referral Hall Violation (invalid telephone & list abuse),

(b) Job Referral & Referral Hall Attendance Violation,

(c) Job Refusal Violation (for insufficient reason),

(d) Working while on the Referral Hall List, and

(e) Failed Drug Test.

2. The penalty for the violation is determined by the number of the occurrences and is applied for each violation event. The following penalties will be applied for each occurrence of the violation:

(a) First Occurrence – the Application will generate a Letter of Violation for mailing to the member. The member will retain his/her rank on the Referral Hall List.

(b) Second Occurrence – the Application will generate a notification letter for mailing to the member Assistance Program advising of the second occurrence of the respective violation. The letters to the MAP will be sent via e-mail.  The member will still retain his/her rank on the Referral Hall List.

(c) Third Occurrence – upon occurrence, the Application will automatically drop the member to the bottom of the Referral Hall List.  The Application will not generate any notification letters.

(d) Any subsequent occurrences – upon any further occurrence, the member will automatically get suspended from eligibility to use the Referral Hall for a predefined number of days. The Application shall generate a letter to be mailed to the member advising of the suspension. Upon expiration of the suspension period, the member is responsible for coming into the Physical Referral Hall, with the Local 580 Referral Hall Administrator in order to be allowed placement back on the Referral Hall List.

(e) In the event of a failed drug test at a jobsite, the member will first have the opportunity to present documentation whether the failed drug test is the result of medication for treatment of a disability.  If the member is unable to provide such documentation, the member will be referred to the members Assistance Program ("MAP") and will be suspended from using the Referral Hall until being cleared to return to work by MAP.

O. Restore Member

1. Under certain circumstances the Local 580 Compliance Officer is allowed to restore a member to the rank held prior to the event that removed the member from the Referral Hall List. Such cases occur when:

(a) A member accidentally removed him/herself from the list.

(b) A member was involuntarily discharged from a job by contractor where the number of workers originally requested exceeded actual required number of workers causing some members being sent back.

2. When operating the Restore function, the following rules apply:

(a) If a member is employed, the Local 580 Referral Hall Administrator will wait until a member reports the job as finished.  Upon doing so, the member's Referral Hall status becomes Eligible and the Local 580 Referral Hall Administrator will restore the member to a previous rank or to the bottom of the Referral Hall list.

(b) The Application will suggest to the Local 580 Referral Hall Administrator the last timestamp when a member was on the Referral Hall List prior to the current date.

(c) If the Local 580 Referral Hall Administrator wishes to restore a member to a different date, the application shall restore a member with the ranking that member held on the selected date if and only if a member held a rank on the selected date, such that a member's Referral Hall status was Eligible (i.e. not suspended, employed, etc.).

P. Union Members

1. Local 580 Union members are workers who are affiliated with the International Association of Bridge, Structural, Architectural, Ornamental, and Reinforcing Iron Workers through Local 580 or another recognized local union. Only Local 580 members who have "active" union status may receive job referrals through the Referral Hall.

2. New member information is entered into the Referral Hall Application by a Local 580 Referral Hall Administrator.  To be entered successfully, the member must complete the Local 580 Referral Hall Enrollment Form.  The Referral Hall Enrollment Form may be submitted in person at the Hall, by mail, or on the electronic Application via the Referral Hall's internet website.  The Local 580 Referral Hall Administrator is also responsible for updating member union status in the Referral Hall Application according to the Union Office records.