UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------x
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

                    Plaintiff,

      -against-

71-cv-02877(LAK)

INTERNATIONAL ASSOCIATION OF BRIDGE
STRUCTURAL AND ORNAMENTAL
IRONWORKERS LOCAL 580, et al.,

                    Defendants.
------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/15/21

**MEMORANDUM AND ORDER**

LEWIS A. KAPLAN, *District Judge.*

        This matter is before the Court on a joint motion by Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC"), Defendant Local 580 of the International Association of Bridge, Structural, and Ornamental Ironworkers ("Local 580"), Defendant Joint Apprentice-Journeymen Educational Fund of the Architectural Ornamental Iron Workers Local 580 ("AJEF"), and Defendant Allied Building Metal Industries ("Allied") (together, the "Parties") to approve the Proposed Consent Decree. *See* Joint Motion To Approve Consent Decree, Dkt. 430.[1] Entry of the decree would begin a three-year process to wind down this litigation after fifty years of work endeavoring to bring Local 580 and its co-defendants into compliance with Title VII of the Civil Rights Act of 1964 ("Title VII"). Consent Decree, Dkt. 430-1 ¶ 34.

        At the core of the Parties' argument in support of their request is the contention that "changed factual circumstances" warrant relief from this Court's existing orders. Dkt. 430 at 2; *see also* EEOC Memorandum in Support, Dkt. 431 at 9-11, 22-24. The Parties highlight significantly increased representation of Black and Hispanic members in Local 580 and its leadership, Defendants' recent record of claimed cooperation with the EEOC, and the purported lack of recent Title VII violations by Defendants. Dkt. 430 at 2. Special Master David Raff, however, opposes entry of the Proposed Consent Decree. Among other concerns, he contends the evidence proffered in support of the motion is unacceptably conclusory. Report and Recommendation, Dkt. 435 at 2.

        A district court must determine at minimum that a proposal such as this is "fair and

---

[1] All docket citations are to 1:71-cv-02877(LAK)(RWL).

reasonable" before approving it in a case like this. *S.E.C. v. Citigroup Glob. Mkts. Inc.*, 752 F. 3d 285, 294 (2d Cir. 2014) (quoting *eBay, Inc. v. MercExchange*, 547 U.S. 388, 391 (2006)). A fair and reasonable consent decree is basically legal, clear, reflects a resolution of the actual claims in the complaint, and is not tainted by improper collusion or corruption. *Id.* at 294-95.

The district court's role is not "merely [to] 'rubber stamp'" consent decrees negotiated by government agencies. *S.E.C. v. Levine*, 881 F.2d 1165, 1181 (2d Cir. 1989). "Consent decrees vary, and depending on the decree a district court may need to make additional inquiry to ensure that the consent decree is fair and reasonable." *Citigroup*, 752 F.3d at 295. Here, the Court requires further information regarding the alleged changed circumstances to ensure that the actual claims at issue in this case have been resolved.

The EEOC hereby is ordered to produce documents and other relevant information not yet disclosed to the Court concerning the following issues:

1. *The EEOC's Outreach to Black and Hispanic Members.* In support of its claim of changed circumstances, the EEOC explains that it "reached out in writing to all Black and Hispanic members of the union" to invite them to share "any information or concerns about any discriminatory conduct" by Local 580 or AJEF. Dkt. 431 at 11. The EEOC asserts that "[t]hese conversations disclosed only a handful of concerns, often unrelated to discrimination." *Id.* The Court agrees with the Special Master that, in order for the Court to properly weigh the evidence, the EEOC must explain its methodology in selecting interviewees and conducting interviews, list the overall response rate, and disclose the results of the interviews taken including "when the outreach interviews occurred, who was interviewed, who conducted the interviews, what questions were asked, and what the respondents said." Dkt. 435 at 11.

2. *Employment Opportunities for Black and Hispanic Members.* The Court requires more information in support of the EEOC's claim that Defendants are "today committed to providing equal . . . employment opportunities to Black and Hispanic individuals."[2] Dkt. 431 at 10. In particular, the Court requests the data underlying the EEOC's pre-settlement analysis for the period of 2009 to 2018 that purportedly uncovered no evidence of discrimination by Local 580. *Id.*

3. *Current Disparities in Hours Worked.* The EEOC admits that "some disparities in hours worked by minority and nonminority union members remain," but maintains that "there is no evidence that these disparities are due to discrimination in referrals made by the union." *Id.* The EEOC instead attributes the disparities to "differences in the average duration of job assignments and the hours worked per unit of time on the job." *Id.* at 10 n.7. The Court

---

2

> Indeed, Defendants remain under an affirmative obligation, pursuant to this Court's remedial orders, to work proactively to ensure proportionate employment opportunities for Black and Hispanic members. *See, e.g.*, 1978 Consent Judgment, Declaration of Justin Mulaire, Dkt. 432-2 § III.A.1; Journeyman Order & Judgment, Declaration of Justin Mulaire, Dkt. 432-5 § VII.A ("Local 580 shall take all steps necessary to insure that black and Hispanic journeymen receive their proportionate share of employment opportunities.").

does not accept this explanation at this time, and requires a detailed accounting of the Parties' efforts to achieve proportionate working hours for Black and Hispanic members.

The required submissions shall be filed no later than 60 days from the date of this order.

SO ORDERED.

Dated: December 15, 2021

Lewis A. Kaplan
United States District Judge